SCHULTZ v. PHENIX INS. CO. OF BROOKLYN.

(Circuit Court, W. D. Virginia. September 15, 1896.)

1. RECEIVERS—POWER TO SUE.
   A receiver of a corporation, appointed by a state court, and empowered, by the order appointing him, to get in the assets of the company, and for that purpose to bring such suits as may be necessary, can sue in a federal court upon a contract for insurance made with the company.

2. PRACTICE—ENFORCING STIPULATION.
   For the purpose of speeding a cause, the attorneys on both sides entered into a stipulation to serve their pleadings on each other before the time to file the same, and to take the evidence in the cause within certain fixed periods, and submit the case so made up to the court. After all the evidence had been taken, and the case was ready for submission, the defendant applied to the court for leave to file an amended answer. *Held*, that the stipulation, deliberately made, should be complied with, and leave to amend should not be given.

**3. EQUITY PRACTICE—AMENDING PLEADINGS.**

The federal courts in equity, while indulgent in allowing amendment of pleadings in matters of form or detail, are slow to allow amendments in matters of substance. Accordingly, *held,* that an affidavit of the defendant's attorney in a suit to enforce a contract for insurance, stating that the deponent had only learned since filing his answer that the complainant sought merely the usual form of policy, and not an unrestricted one, is insufficient to justify granting leave to amend the answer when the bill clearly shows that only the usual form of policy was sought.

**4. SAME—EXCEPTIONS TO ANSWER.**

It is not proper ground of exception to an answer that it alleges that the defendant "doth not admit" the allegations of the bill on certain topics "to be true," and does not specifically answer whether any one allegation is true or false, nor that it does not explicitly admit or deny that there was a contract as alleged in the bill.

**5. SAME—FORM.**

An exception to an answer should state the charges in the bill to which the answer excepted to is addressed.

**6. INSURANCE—CONTRACT FOR POLICY.**

After a long correspondence between certain insurance brokers, representing complainant, and the agents of the defendant insurance company, in regard to the issue of policies on complainant's property, the rate of premium, division of risk, specific description of the property, etc., the defendant's agents, on September 3d, telegraphed the brokers, "With specific form, can write $10,000 at 90 cents, if it will help you." On the same day the brokers replied by mail, acknowledging receipt of the telegram, asking the agents to do as proposed, and inclosing specific forms of description of the property for use in the policies. This letter was delayed in the mail through insufficient postage, but was received by the agents in the afternoon of the next day. It appeared that the forms sent were satisfactory to them, and they were in the act of writing out the policies, when they learned that the property had been burned on September 4th, before the receipt by them of the brokers' letter. *Held,* that there was a completed contract to insure complainant's property, and that the defendant company was liable for the amount of the policy which it had so agreed to issue.

Staples & Munford and William Beasley, for complainant.

Glenn, Slaton & Phillips and T. J. & F. S. Kirkpatrick, for respondent.

PAUL, District Judge. This suit was brought in the state circuit court of Botetourt county, Va., and by the respondent removed into this court. It is a suit for specific performance of a parol contract of insurance alleged to have been made by the Franklin Brass Company, through its agents, J. B. Moore & Co., of Richmond, Va., with P. J. Otey & Co., of Lynchburg, Va., agents of the respondent insurance company. The contract is alleged to have been made by letter and telegraphic correspondence between the agents of the two companies, respectively. Moore & Co. were insurance brokers in the city of Richmond, Va., and Otey & Co. were insurance agents in the city of Lynchburg, Va. The former, in the latter part of the month of July, 1891, applied to the latter to procure fire insurance on the property of their principal, the Franklin Brass Company, of which the complainant in this suit is the receiver, for the sum of $56,000. The property on which this insurance was sought consisted of certain buildings situated at Buchanan, Botetourt county, Va., occupied by the Franklin Brass Company as manufacturer of and dealer in brass, tin, and other

goods; the machinery, materials, and supplies contained in said buildings.

It is claimed that the following correspondence by mail and telegraph between J. B. Moore & Co., the agents of the Franklin Brass Company, and P. J. Otey & Co., agents of the respondent, constitute the contract of insurance:

(No. 1.)

"Richmond, Va., July 28th, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.—Dear Sirs: We inclose two lines on newly-erected plants at Buchanan, Botetourt county. The insurance has been sent us from New York, and comes very highly recommended. We want $56,000 from August the first on Franklin Brass Company at 90 cents, and $30,000 favor of Smith & Briggs Brass Works from July 27th. Full forms and description and plan inclosed. These concerns are reported to us as A 1 in every respect and have long been established in New York and Brooklyn, and they have just completed these plants at Buchanan. There are no exposures, and, as the firms have long been connected with each other, the fire appliances of each are at the disposition of both. Please wire us immediately the amounts you have bound. Full insurance will be carried. There is no other insurance on the Briggs plant. On the Franklin risk the L. & L. & G. have a $25,000 policy, we presume written from the New York office. Since writing the above, we called on Davenport & Co., and find they have written a policy for $9,166.66 at 1 per cent. on memo. sent them from New York office of the L. & L. & G. You can therefore undertake to place this insurance at one per cent., and wire us how much you can bind at that rate, and we will wire the parties, and, if they want to pay that, they can get the insurance; if not, they can let it alone, as we do not suppose you would write the insurance at 90 cents if some one else was getting one per cent. If you cannot write it all in your office, kindly undertake to place it in the other agencies in your city.

"Very truly yours, J. B. Moore & Co."

(No. 2.)

"Lynchburg, Va., July 29, 1891.

"Mess. J. B. Moore & Co.—Dear Sirs: Yours to hand, with diagram, &c., of Buchanan risk, but am afraid can't manage it unless the Cos. know we've personally inspected it. Therefore one of us will visit Buchanan to-morrow to go over the ground, and will report on our return.

"Truly yours, P. J. Otey & Co."

(No. 3.)

"Lynchburg, Va., July 31, 1891.

"Messrs. J. B. Moore & Co., G. A.—Dear Sirs: We inspected the Smith & Griggs Brass Works and Franklin Brass Co.'s Works yesterday. Of the only 5 Cos. there is a possibility of our placing it in, don't think one of them will carry it at 1%. The rate is too low, and can't say otherwise, but will submit it at 1%, without comment as to rate, subject to their accepting it, and let you hear from us as soon as heard.

"Truly yours, P. J. Otey & Co."

(No. 4.)

"Lynchburg, Va., Augt. 1, 1891.

"Messrs. J. B. Moore & Co., G. A.—Dear Sirs: We mailed yesterday the D. Reports of the two Buchanan risks, and hope they'll pass muster in all the Cos., especially in view of the fact that we called attention to the L. & L. & Globe's line at 1%, and if they can carry it at that it's good enough for any of them at same rate, and recommended it upon our personal inspection, saying nothing about rate (which we think too low, as we wrote you), but leaving the inference that 1% was the fixed rate fixed by the Cos. Expect to hear from Cos. Monday.

"Truly yours, Otey & Co."

(No. 5.)

"Richmond, Va., Aug. 1st, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.—Dear Sirs: Your favor of the 31st inst. just received. If you succeed in getting any of your companies to write the

Buchanan risk, and they will not be able to take all of it, please try the other agents before sending it back. The Ins. Co. of N. A., Queen, and German-American are fond of such risks. If any of the companies show a disposition to write the risks at a higher rate, and will not write it at 1%, please let us know.

"Yours, very truly, J. B. Moore & Co."

(No. 6.)

"Richmond, Va., Aug. 4th, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.—Dear Sirs: Your favor of the 1st inst. received, and noted. We have taken up the matter of rate on the Buchanan property with the party who sent it to us, and they have agreed to pay 1.25 for the insurance, if necessary. If you have already placed the insurance at 1%, and think it will stick, you can use your good judgment as to whether it would be well to pay the companies 1¼ now. As far as we are concerned, we think it is worth that much. We notice you have written the insurance up. Please wire us in the morning how much you have bound; whether it sticks or not; so we can advise our clients.

"Yours, very truly, J. B. Moore & Co."

(No. 7.)

"Lynchburg, Va., August 5th, 1891.

"Mess. J. B. Moore & Co.—Dear Sirs: Yours of the 4th to hand. A change in our Northern schedule of trains from two to one mail a day, arriving at 5:20 a. m., has interrupted and delayed hearing from the Cos., and deemed it best to give them full time rather than afterwards to have to cancel and recall policies. If nothing is heard to the contrary, the indications are we can write $10m on Smith & B. and $47m on Franklin Brass Co., Globe, Va. F. & Marine, and H. Bremen declining line on the former and Globe a line on the latter; but next mail may change this, tho' we hope not. Could we have more time, and not be so hurried, which is easy to avoid, on risks similar to this, to fully communicate with the companies, more could be accomplished, and the results much more satisfactory in the end. There should be no vacillating about rate; ought to be always definitely settled. It will take 1¼ to hold some of our companies, and it must be uniform to all.

"Truly yours, P. J. Otey & Co."

(No. 8.)

"Lynchburg, Va., August 6th, 1891.

"Mess. J. B. Moore & Co., G. A.—Dear Sirs: Herewith find policies

| | | | |
|---|---|---|---|
| Franklin Brass Co | 37,333,33 | 1¼ | $466.68 |
| Smith & B | 10,000 | 1¼ | 125. |
| | | | $591.68 |

"Am still working on the balance—Globe, Va. F. & M. and H. B. deserted us, but are not without hopes and a prospect of anchoring all of it.

"Truly yours, P. J. Otey & Co."

(No. 9.)

"Richmond, Va., Aug. 6, 1891.

"Mess. P. J. Otey & Co., Lynchburg, Va.—Dear Sirs: Your telegram recd. We replied, asking you to place the balance & if possible forward policies to-night, which we now confirm.

"Yours, truly, J. B. Moore & Co."

(No. 10.)

"Richmond, Va., Aug. 8th, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.—Dear Sirs: Your favor of the 6th inst., with policies as stated received, for which please accept thanks. Kindly let us have about ½ doz. each forms & oblige,

"Yours, truly, J. B. Moore & Co."

(No. 11.)

"Lynchburg, Va., Aug. 8th, 1891.

"Mess. J. B. Moore & Co., G. A.—Dear Sirs: London & L. wrote to know 'shouldn't they have a separate amount on tools in brick fireproof building.' We replied to this, and hope to satisfy them on this point. But another of our Cos. says: 1st. 'The policy is somewhat blanket, as it embraces the outhouses and con-

tents, and must trouble you to change policy to apply only on or in the brick and frame adjoining buildings, or name specific sum to cover on each outhouse and contents. 2d. Also do not care to grant permission to work at night without extra charge, and the time should be restricted to not later than 10 p. m.' We have replied to above, but in the meantime let us have your views. If one policy is changed, all should be made concurrent therewith; and whether or not wouldn't be better to let this one go, take it up, and try place it in some other Co., unless you prefer to frame an indorsement to cover the ground, and send us.

"Truly yours, P. J. Otey & Co.

"Or could the suggestion of this co. be complied with in the 1st case, leaving it to apply on or in the brick and frame adjoining building, if we can satisfy it in the 2nd case?"

(No. 12.)

"Richmond, Va., Aug. 8th, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.—Dear Sirs: Your favor of the 8th inst. received, and we have written the parties concerning the same, and have asked them to advise us at once; and as soon as we hear from them we will let you know. Had better keep all of the insurance in force until you hear from us. We think the specific insurance ought to be named on the outhouses and main building, and are in hopes the party will see that this is the correct way.

"Yours, very truly, J. B. Moore & Co."

(No. 13.)

"Mess. J. B. Moore & Co., G. A.

"No. 1735550. Franklin Brass Co.,

"L. & Lancashire.

"Dear Sirs: We have been unable to satisfy L. & L. They say, in view of the fact that the tools are very valuable & kept in fireproof and practicably separate building, they consider we ought to have the co-insurance clause on this item, and glad therefore if you'll amend policy accordingly, as without this condition we should hardly care to pass the line as written. Please advise us, and, if they can't be pacified, return us policy for cancellation. Haven't heard from the Home of N. Y. yet, who discovered the 'mare's nest' 'that form of policy was somewhat blanket,' and wanted extra premium for night work, but are not without hopes that our letter will satisfy them on both policies.

"Truly yours, P. J. Otey & Co."

(No. 14.)

"Lynchburg, Va., Aug. 14, 1891.

"Mess. J. B. Moore & Co., G. A.—Dear Sirs: Will mail you to-morrow four policies: 3 on Smith & Briggs Brass Works, $15,000; 1 on Franklin Brass Co., $5,000. Would have mailed with this, but was too late to register at P. O., and didn't feel safe to trust the mail. Referring to yours of the 8th inst., we agree with you that 'specific insurance ought to be named on the outhouses and main building,' which could easily be done by an indorsement until the expiration of the policies, when the form of policy could be readjusted. See if it can't be done.

"Truly yours, P. J. Otey & Co."

(No. 15.)

"Lynchburg, Va., Aug. 15th, 1891.

"Mess. J. B. Moore & Co., G. A.—Dear Sirs: We mail you to-day as follows:

| | | |
|---|---|---|
| 3 policies Smith & B | $15,000 | $187 50 |
| 1 Franklin B. Co | 5,000 | 62 50 |
| | | $250 00 |

"Of the original amounts named to us, it leaves yet to be placed $5,000 on the former, and about $13,667 on the latter. Don't think the Cos. will be satisfied until the policies are made specific on the buildings, tools, patterns, &c., which it seems to us might easily be done by indorsement applicable to all, or writing a new form covering all the objections or "hobbies" of the Cos., take up present policies, and rewrite the insurance, dating back to original issue. Are still working on the balance, and hope to report it placed early next week.

"Truly yours, P. J. Otey & Co."

(No. 16.)

"Richmond, Va., Aug. 17, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.—Gentlemen: Your favor of the 15th inst. received, but we have not yet received the policies, but trust they will come in to-morrow. We are still writing about the form of the policies, and hope to let you hear from us in a few days. About the rate, do you think you could have placed the insurance at 1¢? It seems that the party who placed the insurance with us is having some trouble with the insured because of the high (?) rate he paid for it. We have written him that the insurance could not have been placed for less, and that, if the insurance had been in this city, they would have had to pay from 1¼ to 2% for it. We would be glad to know if you think we were right, and also to let us know if you think you can place any of the insurance at 1%.

"Yours, truly,                                                    J. B. Moore & Co."

(No. 17.)

"Lynchburg, Va., Aug. 17, 1891.

"Mess. J. B. Moore & Co.
          "Smith & Briggs Co.—Niagara Fire Ins. Co.

"Dear Sirs: Please return us the above policy. 'Twas delivered to us as having accepted the risk, but the agent recalled it to-day upon letter from the Co. We are trying to substitute it, and also to anchor the balance outside the breakers.

"Truly yours,                                                    P. J. Otey & Co."

(No. 18.)

"Lynchburg, Va., Aug. 18, 1891.

"Mess. J. B. Moore & Co., G. A.—Dear Sirs: Yours of the 17th to hand. We can't place the risks you refer to at less than 1¼¢, and have had considerable difficulty to get them stand at that. We had to recall the Niagara yesterday, and unless some indorsement or rearranging of the policies is made to make them more specific, as stated in previous letters from this agency, our instructions will compel us to recall several more. We personally and thoroughly inspected this risk, and believe 1¼¢ a low rate. Wild cats going it blind, and writing at random, may write it, and, when loss comes, deny liability, and let assured hunt 'em up, and make their money if they can, as is the case with our drig mill here; but we are not in that line.

"Truly yours,                                                    P. J. Otey & Co."

(No. 19.)

"Lynchburg, Va., Aug. 20, 1891.

"Mess. J. B. Moore & Co., G. A.—Dear Sirs: What, if anything, has been done to remedy the blanket feature in the policies of Smith & Briggs and the Franklin Brass Co.? Our inquiry is to enable us to communicate intelligently with our Cos., who are inquiring of us how matters stand, and unless the policies are made to cover specifically on and in each outhouse or add the co-insurance clause, several of them will withdraw their policies. Please let us hear from you definitely, and oblige.

"Truly yours,                                                    P. J. Otey & Co.

"Please send check for Moore Lime Co. premium."

(No. 20.)

"Richmond, Va., Aug. 21, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.—Gentlemen: Your favor of the 20th inst. received and noted. The reason we haven't advised you regarding the form of policy is because we are trying to get the assured to accept the rate of 1¼¢. They seem to think that this is too high. After we get them to accept this, we will advise you as to the form. If the companies require the change, it will have to be made, or the policies canceled. We don't think there will be any trouble about the form after we have fixed the rate all right.

"Yours, truly,                                                    J. B. Moore & Co.

"We will advise you as soon as we hear anything."

(No. 21.)

"Lynchburg, Va., Aug. 21, 1891.

"Messrs. J. B. Moore & Co., G. A.—Dear Sirs: We've a letter from L. & Lancashire, asking for specific amount upon tools in the fire-proof tool house, but, if

unable to do this, to have full co-insurance clause applied. Unless you can comply with either one or the other of these conditions, had better return them, and return us the policy.

"Truly yours,                                              P. J. Otey & Co."

(No. 22.)

"Lynchburg, Va., Aug. 22, 1891.

"Messrs. J. B. Moore & Co., G. A.—Dear Sirs: Yours of the 21st inst. to hand. We saw a special to-day, who has been all through the Buchanan risks. Says he thinks if the Cos. could see the risks, and the policies divested of their blanket feature, would write the Franklin Brass Co. at 1%, but the other is fully worth 1¼. There's an old saying, 'White man mighty unsartin,' and our short experience with these risks has forced the conclusion that it is specially applicable to Ins. Cos. The policies are very plainly blanket, in fact quite badly so, but see how the Cos. stand regarding them. One wants specific amount on tools, and everything else is lovely; another demands specific amounts on buildings and outhouses, ignoring altogether their contents; still another wants patterns singled out, which will cover all other defects; whilst several of the daintiest and most dyspeptic Cos. we have, eternally finding fault, and seized with vomiting or purging whenever they receive D. Report of a risk outside the corporate limits, or have to pass on one with steam mentioned at less than 1½, have swallowed blanket and all, and as happy as they can be. Unless policies, however, are made to harmonize all these conflicting elements, they'll go off the risk. Home of N. Y. & L. & Lancashire decline the risk under present form of policy, and unless you have arranged form to be specific, and to suit them, better return us the policies of these two; but if you can make policies specific, and suit Cos., we think we might get Cos. to write Franklin Brass Co. at 1%.

"Truly yours.                                             P. J. Otey & Co."

(No. 23.)

"Lynchburg, Va., Aug. 22, 1891.

"Messrs. J. B. Moore & Co., G. A.—Dear Sirs: Since writing you, we have seen Mr. Gordon, of the H. Bremen. who has inspected the Franklin B. Co.'s Works and Smith & Briggs Works. Also showed him form of policy. He is of the opinion if the form of policy is made specific to satisfy the kickers, the former (F. B. Co.) can be written at 1%, and 1¼% is a fair rate on the latter as it stands at present. With this information and upon his judgment, if you can do no better, think we can get the Cos. that have issued policies on them to stick; but some, if not all, will have to be written over.

"Yours, truly,                                            P. J. Otey & Co."

(No. 24.)

"Richmond, Va., Aug. 24, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.—Gentlemen: Your favor of the 22nd inst. received, and also your telegram of this morning, and we await with interest your letter. To-day we were offered a line on the Franklin Brass Works from Jno. W. Gordon's office at 1%, and we told the gentleman that we had placed the risk. They thought that we had placed the other risk there, and that we could write a line on this. Gordon no doubt went to Buchanan, and told these people that he could place this risk at 1%, and they gave him a line of $40,000. We don't think he will place any here, as we had already tried the market, and then all the companies here likely to write it already have a line on it through you. We don't think Gordon will be able to work his little game. If it is possible for you to get this insurance written at 1%, please make every effort to do so. We have never seen the risk, and only thought it ought to pay a higher rate on it according as it looked on the paper. We don't think there will be any doubt about making the forms all right if we can get the rate to 1%. We think the forms ought to be corrected anyhow, no matter what the rate is. We suppose you still have some reason for holding to 1¼, but will know in the morning, when we receive your letter. We do hope you will be able to make it 1%, and, as soon as you think you can, please let us know.

"Yours, very truly,                                       J. B. Moore & Co."

(No. 25.)

"Lynchburg, Va., Aug. 24, 1891.

"Messrs. J. B. Moore & Co., G. A.—Dear Sirs: Have letter this morning from one of our dyspeptic Cos. kicking. Wants 'specific amount on each building not

connected with or adjoining main building; also on stock and machinery in building; also specific on patterns, engines, and boilers. And it is only proper we should have the advantage of a properly written policy at the low rate which the risk is written.' Therefore we telegraphed you, 'Retain one and quarter on Buchanan. Write you to-day'; and now confirm same. Without this Richmond in the field, saw a prospect of manipulating matters to reduce rate to 1%, but this upsets all our plans, and don't believe we can hold Cos. at less than 1%, tho' willing to do all we can for you.

"Truly yours,      P. J. Otey & Co."

(No. 26.)

"Richmond, Va., Aug. 25, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.—Gentlemen: Your favor of the 24th inst. received and noted. How would it do to write the companies carrying the Franklin Brass Co., telling them what has been said by the 'Specials' inspecting the risk, and ask them if they would be willing to write at 1%? It might be that they would write for 1%, as you say you cannot tell what insurance companies will do. We think this would be a good plan, and will be glad if you would try it.

"Yours, truly,      J. B. Moore & Co."

(No. 27.)

"Lynchburg, Va., August 25th, 1891.

"Mess. J. B. Moore & Co., G. A.—Dear Sirs: Yours of the 24th to hand. Don't doubt but that Cos. can be found to write the Franklin Brass Works at 1%, but have heard from all of ours who seem to consider the rate low enough. None will write it, however, without specific amounts upon each building and contents of each, or the average clause inserted, and as it now stands decline the risk, and you can return us the policy by next mail. But if you wish us to do so, and will send us form amended to suit the Cos., will endeavor to hold the five companies at 1%. We suppose Mr. Gordon got on to this risk through our placing a line in the H. Bremen, which they declined by telegraph, and wrote us they had referred the matter to his office, and, being in that section, at the Cold Sulphur Springs, and having an agent at Buchanan, availed himself of the opportunity offered to go for it. Send new form with policies, and will see what we can do.

"Truly yours,      P. J. Otey & Co."

(No. 28.)

"Lynchburg, Va., August 25th, 1891.

"Mess. J. B. Moore & Co., G. A.—Dear Sirs: We have seven Cos. that will carry the $56,000 on Franklin Brass Works at 1¼, provided form of policy is made specific as per ours of even date with this, and five $5,000 each on Smith & Briggs on same condition. The other policies we hold here, deeming it unnecessary to forward them until some definite conclusion and arrangement is reached by you, of which you can inform us, when we are ready to go ahead and try and hold them at 1%.

"Truly yours,      P. J. Otey & Co."

(No. 29.)

"Richmond, Va., Aug. 26, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.—Dear Sirs: Your two favors of the 25th inst. received. Will you please write out and send us such a form as you think will suit the companies on the Buchanan risk, especially on the Franklin Brass Works. There have been so many requests from the different companies that we are afraid we would overlook some point if we undertook it. Let us have it as early as convenient, and oblige,

"Yours, very truly,      J. B. Moore & Co."

(No. 30.)

"Lynchburg, Va., August 26th, 1891.

"Mess. J. B. Moore & Co., G. A.

   "Policy No. 1735550, London & L. Ins. Co. F. B. Co.

"Dear Sirs: We have letter ordering cancellation of above policy, which please forward by return mail, if you've not already returned the policies as per ours of the 25th. What are and what have you been waiting for? For we think delay has interfered with placing this risk. In approaching the Cos. for 1% after ascertaining the form was objectionable, it should have been reconstructed at once to suit and harmonize all objections, and resubmitted with a full statement of all the

facts and circumstances concerning the risk, our experience being that correspondence without D. Reports accomplish little or nothing, same as D. Reports submitted 'not binding until heard from,' which are always turned down. We would have pursued this plan at once had we had a new form of policy.

"Truly yours,                                          P. J. Otey & Co."

(No. 31.)

"Lynchburg, Va., August 26th, 1891.

"Mess. J. B. Moore & Co., G. A.—Dear Sirs: Yours of the 25th to hand, and as suggested have written Cos., and if they agree to carry Franklin Brass Works at 1¢ will let you know. They'll not carry it at all with present form of policy; more objectionable, it seems, than any question as to rate; and please return us the policies, if you've not already done so, that we may comply with the instructions of the Cos. that we relieve them and return the policies.

"Truly yours,                                          P. J. Otey & Co."

(No. 32.)

"Lynchburg, Va., August 27th, 1891.

"Messrs. J. B. Moore & Co., G. A.—Dear Sirs: Yours of the 26th to hand, and, after again and carefully reading over the forms of the Buchanan risks, have concluded we are unequal to the task of originating a form to harmonize all the demands of the Cos., unless on the ground and acting in conjunction with the insured or owners. Just impossible to do it with the data and information at hand. If the amount of insurance is very near the burnable value of the property insured, there can't be much objection to the present form, in which event the assured could well afford to have the average clause made a part of the policies, which we think would satisfy the Cos., and be the shortest way out of the difficulty, which that broker brought about, and ought to have known better when he did it.

"Truly yours,                                          P. J. Otey & Co."

(No. 33.)

"Lynchburg, Va., August 31st, 1891.

"Messrs. J. B. Moore & Co., G. A.—Dear Sirs: Referring to ours of the 26th, have again to request that you return us the policies on the Franklin Brass Co., the Cos. declining positively to write them under the present forms of policy; and not until made specific, or the average clause applied, will they accept it. The same applies equally to Smith & Briggs, except they having only one building. Suppose the average clause would cover all objections, and be satisfactory. Heard so far from only one Co. as to 1¢ on F. Brass Co., which they leave to us, and expect to hear from the others to-morrow. Whenever you furnish us form, or decide what you'll do, are ready to proceed under your instructions.

"Truly yours,                                          P. J. Otey & Co."

(No. 34.)

"Richmond, Va., Sept. 1st, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.—Gentlemen: We have at last succeeded in getting hold of the Franklin Brass Co.'s policies, and inclose them herewith. In regard to the form, leave out the words 'including outbuildings.' This will therefore make policy specific as regards location. As to patterns, you can place specific amount on them, in the proportion of about $5,000 to $60,000, as we judge their proportion is about one-tenth. Should you think the amount on patterns should be larger, in that case increase the proportion, as it will be better to reduce than to increase these figures, if subsequently found necessary. We can also limit time for working at night to 10 p. m. We think this now covers all the wishes of the companies. The tool house and contents belonging to the Franklin Brass Co. are not intended to be insured, and will not be now that the words 'including outhouses' are left out of the policies. The rate at which this is to be written is one ¢, and we hope you will not have any trouble in placing at this rate; and the form is now in such shape as not to give you any more trouble. As to the form of policies for the Smith & Briggs, you can make the same changes as apply to the above, sending us new wording for the policies you have already sent, and we will attach to policies, and changing the wording of the policies you have now in hand. Kindly let us have the policies as early as convenient.

"Yours, truly,                                          J. B. Moore & Co."

(No. 35.)

Telegram.

"9/2, 1891.                                                    Lynchburg, Va., 2.

"J. B. Moore & Co., Richmond, Va.: Companies require policies rewritten. Return all. If furnished form, can help you; otherwise cannot. See letter.

"P. J. Otey & Co."

(No. 36.)

"Lynchburg, Va., Sept. 2d, 1891.

"Mess. J. B. Moore & Co., G. Agents—Dear Sirs: Yours of the 1st to hand, and now confirm telegram of this date, 'Companies require policies rewritten. Return all. If furnished form, can help you; otherwise cannot. See letter,'—which is in accordance with our letter of the 27th, and our instructions from the Cos. You suggest to us how to write the form, when at the same time you could have prepared and had it printed in an hour or two, and sent forms with policies returned. We have consumed considerable time and labor in this risk, besides trouble and expense incurred, more to accommodate you than for any benefit in it to us, and willing to repeat it with any assurance the policies will stick; but with the meager data in our possession, and probability our work would not stand, are unwilling to duplicate it on an uncertainty. We can write $10,000 in one Co. on F. B. Co. at 1%, and 15 to 20,000 more, if it will stick, at same rate. Soon as the form of policy is definitely settled, whether the old one or a new one specific, please inform us. We have information—whether correct or not, can't say—that H. Bremen, Commercial Union, & Phœnix of London, have $5,000 each and Aetna, Home N. Y., & Pennsylva., $2,000 each (under old form of policy blanket), four of which we represent, that positively declined it under blanket form, and we are loath to believe it; but, if so, they will not be the gainers thereby. We are willing the same rules shall apply to all agents, but when we are made an exception, and treated unfairly, we see to it that we get even, and we will do so in this case. Hoping to hear from you promptly with form and definite instructions, are,

"Truly yours,                                           P. J. Otey & Co.

"Please excuse the writer for saying he thinks the forms gotten up by that N. Y. broker about the damnest specimens he ever encountered."

(No. 37.)

Telegram.

"10:30 A. Sept. 1891.                                      Richmond, Va., 2.

"P. J. Otey and Co.: Telegram received. Sent you policies and new form last night.                                           J. B. Moore & Co."

(No. 38.)

Telegram.

"9/3, Lynchburg, Va., 3.

"J. B. Moore & Co., Richmond, Va.: With specific form will write ten thousand at ninety cents if it will help you.                        P. J. Otey & Co."

(No. 39.)

"Richmond, Va., Sep. 3, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.—Dear Sirs: Your favor of the 2nd inst. recd. We tried to have the forms printed so as to be ready this evening, but the best promise we could get from all the printers here was to-morrow morning, —some even later,—so we have written them out on the typewriter, and inclose them herewith. We trust the forms as now written is specific enough, and will satisfy the companies. We know that you have been to a great deal of trouble and expense regarding the placing of this risk, and we assure you it is appreciated, and we hope now that everything will go lovely. We have been informed by the Agts. here who took the insurance for Gordon that it has all been canceled, some by Gordon himself and some by the companies; so we won't have any more bother with him. We hope you will be able to place the insurance on the Franklin Brass Co. at 1%. We also have your telegrams that you can place 10,000 at 90c., and trust you will do so, as we would like to get it as low as possible. The amount on the patterns, that is to be $1/10$ on the entire insurance, & is to be deducted from the amount wanted on machinery. As we, in our hurry, sent you the total amounts wanted on the different items, we haven't any way of figuring it out ourselves. In

sending the policies we would be glad if you would return us the original memo. sent you. We will be glad to receive the policies from you as early as convenient. Send us the policies for the full amt. of the original order sent you.

"Yours, truly, J. B. Moore & Co."

(No. 40.)

Telegram.

"Richmond, Va., Sept. 5th, 1891.

"P. J. Otey & Co., Lynchburg, Va.: Wire total amount placed of Franklin risk. "J. B. Moore & Co."

(No. 41.)

Telegram.

"Lynchburg, Va., Sept. 5th, 1891.

"J. B. Moore & Co., Richmond, Va.: Twenty-five thousand to-day if accepted. Twenty thousand Monday, same terms. Return us Aetna and Phenix policies, Smith & Briggs. P. J. Otey & Co."

(No. 42.)

Telegram.

"Richmond, Va., Sept. 5th, 1891.

"P. J. Otey & Co., Lynchburg, Va.: Forward us all policies Franklin. Will hold subject to acceptance by companies. J. B. Moore & Co."

(No. 43.)

"Richmond, Va., September 5th, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.: Dear Sirs: We received your telegram in answer to ours, and we wired you to send all the policies you had to us, and we trust we will receive the same in Monday's mail. If you have not sent them, we want to know how much insurance is placed and binding, and from what time. We should think the $10,000 you wired us you could place at 90c. would be placed, and also the policies returned to you by us, as we have changed the form as requested in every case. We hope you have succeeded in placing the $45,000.

"Yours, truly, J. B. Moore & Co."

(No. 44.)

"Lynchburg, Va., Sept. 5th, 1891.

"Mess. J. B. Moore & Co., G. A.—Dear Sirs: We telegraphed you to-day: '$25,-000 to-day, if accepted. $20,000 Monday, same terms. Return us Smith & Briggs Aetna and Phenix policies.' Please return us, if you haven't already mailed them, in accordance with our telegram, the Aetna and Phenix policies on Smith & Briggs, having notified you they were not in force under the blanket form of policy, and the Cos. would not accept the risk until form was made specific.

"Truly yours, P. J. Otey & Co.

"Also return us Geo Home No. 160,261 and Northern 11,322."

(No. 45.)

"Lynchburg, Va., Sept. 5th, 1891.

"Messrs. J. B. Moore & Co., G. A.—Dear Sirs: Since your telegram and our letter of to-day, we learned from the columns of the Richmond Times of the burning of the Franklin Brass Works, and a close call it was. How does this affect, if at all, the Smith & Briggs risk, except we are afraid, under the specific form, it will be difficult to place it now; but, if we can will help you to do so. Let us have your views by return mail, and return us all the S. & B. policies.

"Truly yours, P. J. Otey & Co."

(No. 46.)

"Lynchburg, Va., Sept. 7th, 1891.

"Mess. J. B. Moore & Co., G. A.—Dear Sirs: Yours of the 3rd, with inclosures, did not reach us in the regular course of mail on the 4th; held for insufficient postage, (7) seven cents due, and received too late to do anything towards writing the policies and placing that we couldn't carry until the 5th, and were writing the D. Reports Saturday, as our records will show, when, simultaneously with your inquiry by telegram asking how much placed on Franklin Brass Co., we received

a telegram informing us of burning of the works on Friday. You failed to return us No. 1225 Aetna & No. 2493 Phenix, Smith & Briggs, as per our telegram 5th and letter of same date and previous letters of August 31st and of the 2nd and 4th of Sept., these Cos. declining to write the risk except under specific form.

"Truly yours, P. J. Otey & Co."

(No. 47.)

"Lynchburg, Va., Sept. 8th, 1891.

"Messrs. J. B. Moore & Co., G. A.—Dear Sirs: Please inform us what Cos. were on the Franklin Brass Works at the time of the fire.

"Truly yours, P. J. Otey & Co.

"We make the inquiry, having heard the entire line was placed in Philadelphia a few days before the fire."

(No. 48.)

"Richmond, Va., September 9th, 1891.

"Messrs. P. J. Otey & Co., Lynchburg, Va.—Gentlemen: Your favor of the 8th inst. received and noted. We have not heard of any other insurance on the Franklin Brass Works, except that placed by you. We have not heard anything about it having been placed by a Phila. agent, or placed in that neighborhood. We consider that all the insurance placed by you, and not ordered canceled by the companies before 12 o'clock on September 5th, was in force, and that the policies returned to you by us were merely sent or returned to you for indorsement, as they were already in force, and the forms had been changed to answer all requirements of the companies. Our first letter to you of the 1st inst. gave you the form under which the insurance would be acceptable to the assured, and the mere fact that you wrote us to have the forms printed and sent to you would not alter the status of the case; and the fact that the forms were late in reaching you, tho' we mailed them before the fire, would not alter the case. We consider that certainly the policies we returned to you were in force, and referring to your favor of the 25th ult., you stated that you can carry $56,000 at one and one quarter, and you would try and see if they could be held at one per cent., and later that you would write the companies, and ask if they would write at one per cent. We claim that all that did not decline to write at one per cent. are certainly on that risk, if not all that you had bound. The mere fact that you had not rewritten the policies at the time of the fire would not make any difference. We would therefore be glad if you would furnish us with the entire list of companies that you had bound, or had agreed to carry the risk. What became of the company that would write ten thousand at 90c.? We think they ought certainly to be bound, because the form had been made specific before the fire occurred. We have written again for the Smith & Briggs policies, and stated if they were not returned they would be canceled.

"Yours, truly, J. B. Moore & Co."

(No. 49.)

"Lynchburg, Va., Sept. 10th, 1891.

"Mess. J. B. Moore & Co., G. A.—Dear Sirs: Yours of the 10th to hand. In reply thereto, refer you to our letters and telegrams repeatedly advising that our Cos. declined the risks, and instructing you to return the policies. The Franklin Brass Co. never accepted or paid the premium on any policies issued at 1¼ per cent., but on the contrary, declined, and returned them. We take occasion to repeat here that our Cos. declined the Smith & Briggs risk, and return us the policies, Aetna No. 1225, Phenix No. 2498, Geo Home No. 160,261, and Northern No. 11,322, as furnished you in ours of the 7th inst.

"Truly yours, P. J. Otey & Co."

(No. 51.)

"Lynchburg, Va., Sept. 12, 1891.

"Messrs. J. B. Moore & Co., G. A.—Dear Sirs: Yours of the 11th to hand, saying, 'As per your telegram of the 5th inst., stating that you had $45,000 insurance bound for the Franklin Brass Works, &c.' We sent no such telegram, a copy of ours of the 5th to you, now before us, nor one from which any such conclusion or inference could be deduced, and by reference thereto, and reading it again, may enlighten you some.

"Truly yours, P. J. Otey & Co."

[Note. The letter "of the 11th," referred to, not among the exhibits.]

(No. 51.)

"Lynchburg, Va., Sept. 12, 1891.

"Smith & Briggs Policies.

"Mess. J. B. Moore & Co., G. A.—Dear Sirs: Yours of the 11th to hand, with 4 Pols. Our instructions were to cancel these policies, and return them; and whatever is done now, as in the case of the F. B. Co., will be a new deal. They relied for water supply and fire protection on the brass works. This is no longer available, and places the risk in a new aspect. Don't think, from information we have, that the Cos. formerly on it will write it now, but, as have indicated all along, even with the prospect of no return for our labor and some outlay, if furnished with forms and information as to water supply and means of appliances for protection from fire, that we may fully and intelligently submit it, and thereby avoid subsequent correspondence, will endeavor to help you all we can.

"Truly yours,                              P. J. Otey & Co."

There are a number of preliminary questions raised on the pleadings which the court will dispose of before considering the merits of the cause. The first of these is a demurrer to the bill on the ground that the receiver cannot sue on the contract sought to be enforced in this suit. The decree of the circuit court of Botetourt county appointing the plaintiff in this suit receiver of the Franklin Brass Company expressly confers upon him the power to take any necessary step to get in the assets of the company, and for that purpose to bring such suits as may be necessary. This decree is the charter of his powers and authority, and imposes on him the duty of collecting and reducing into possession the assets of the company of which he is made receiver. And as he has succeeded to and is invested with all the rights, powers, and authority of the corporation of which he is made receiver, he, in the opinion of the court, is the proper person to bring this suit. The corporation itself, being in the hands of a receiver, could not maintain this suit; the individual stockholders could not do it; and there is no one else but the receiver who could do it. The demurrer is overruled.

Before any depositions were taken in the cause, the parties, by attorneys, made the following agreement:

"Lynchburg, Va., Nov. 25, 1895.

"J. Z. Schultz, Receiver of the Franklin Brass Company, v. The Phenix Insurance Company of Brooklyn.

"With the view of maturing the above-styled cause for a final hearing on the merits at the March term, 1896, of the United States circuit court for the Western district of Virginia, at Lynchburg, it is hereby agreed between counsel for the plaintiff and defendant as follows:

"(1) Within thirty days from the date of this instrument the defendant shall prepare, in the form in which it will be filed in this cause, and deliver to the plaintiff, its answer to the bill herein.

"(2) Within ten days from the delivery of such answer the plaintiff shall prepare, in the form in which it is to be filed in the cause, and deliver to the defendant, his replication to said answer.

"(3) Should an issue then be made up, or, in any event, as soon as an issue is so made up, the plaintiff shall have twenty days within which to take his depositions.

"(4) The defendant shall then have the next twenty days within which to take its depositions.

"(5) The plaintiff shall then have seven days within which to secure rebuttal evidence, and

"(6) The defendant shall then have seven days within which to secure evidence in surrebuttal.

"Legal notice to take depositions shall be waived by counsel for each side: provided, however, that opposing counsel shall have reasonable notice of the time and place of taking depositions.

"The case thus made up shall be submitted to the court during said term, for decision and decree; and all the proceedings shall be as binding upon the parties as if the cause had been regularly matured and proceeded in in court.

"The taking of the depositions shall be in accordance with the rules governing the taking of depositions in the circuit courts of the state of Virginia.

"[Signed]                                      Wm. Beasley,
                                               "Of counsel for Plaintiff.
"[Signed]                      .               T. J. & F. S. Kirkpatrick,
                                               "Of counsel for Def't Co."

Considerable correspondence between counsel has been filed as to the effect of this agreement, which it is unnecessary for the court to consider. On the 24th of December, 1895, the respondent served on the complainant's attorney a copy of its answer as it expected to file the same on the first day of the next term of the court. Some time in the month of February, 1896, counsel for the respondent served on counsel for the complainant a copy of an amended answer, which the respondent now asks leave to file. The agreement of counsel entered into on the 25th of November, 1896, with the view of maturing the cause for a final hearing, is such as they had a right to make. It waives no constitutional right of either party to the cause. It is clear and definite in its terms, and the court does not see that either party could have been prejudiced thereby. Counsel have not chosen to deal with each other at arm's length, following the strict rules of pleading, neither asking nor making concessions. For the court to allow one party to such an agreement to disregard it might work serious detriment to the other; especially in a case like this, where all the evidence has been taken, and the case is ready for submission. The parties having entered into such an agreement deliberately, it is the duty of the court to see that its terms are complied with. But, independently of the agreement between counsel, the respondent has no right to file its proposed amended answer. Its motion to do so is based on the following affidavit:

"U. S. Cir. Ct, Western Dist. of Virginia.

"Schultz, Receiver, vs. Phenix Ins. Co.

"Jno. M. Slaton, being first duly sworn, deposes and says that he is attorney for the defendant above; that at the time the answer in the above case was drawn and served upon the pl't'ff's attorney he did not know that the plaintiff would acknowledge that he expected to receive from the def't a policy of insurance containing the usual conditions and limitations, but, on the contrary, was led to believe, and did believe, from the plaintiff's bill, that it would claim and contend for an absolute contract of insurance without restrictions or limitations of any kind or nature, and that the answer herein was drawn with this belief; that he first learned that plaintiff would claim that he expected the usual policy after such answer was served, and, as soon as practicable after knowledge thus first obtained the amended answer herein offered was drawn and served, and that he had absolutely no knowledge of the fact that plaintiff would contend for the usual policy. The amended answer was drawn and served with due diligence. Further saith not.

"[Signed]                                      John M. Slaton.

"Sworn to and subscribed before me this March 20, 1896.
"[Signed]                      Wm. Beasley, Notary Public, City of Lynchburg."

The allegations in the bill, which of course were before counsel for the respondent when the answer was framed, show very clearly that it contends for the usual policy, and expected such to be issued on its alleged contract of insurance. After reciting a portion of the

correspondence between J. B. Moore & Co. and P. J. Otey & Co., the bill continues:

"It will appear from the foregoing that prior to the fire which destroyed the said property, the said P. J. Otey & Co. had indicated their willingness to insure this property, a full description of which, and a division of the amounts of insurance on the several articles of property, were already in their possession, with insurance aggregating $10,000, at 90c. on the $100, if the assured, through its agents, would prepare a specific form. This specific form was duly prepared and deposited in the post office at Richmond, Virginia, addressed to P. J. Otey & Co., on the 3d of September, 1891. This form was satisfactory to P. J. Otey & Co., as the representatives of the insurance company, and was so accepted by them without objection; and they subsequently acknowledged that when they learned of the fire on the 5th of Sept., 1891, they had actually prepared, or were preparing, a policy of insurance covering the said property, using the said form."

The bill further alleges that at the time the contract to insure was made,—September 3, 1891,—"the said P. J. Otey & Co. were the duly-authorized agents of the said Phenix Insurance Company of Brooklyn, and had policies of insurance duly signed and executed by the officers of said company which they were authorized to fill out and deliver." In the prayer of the bill it is asked that the respondent "be required specifically to perform its said agreement to insure said property, and to deliver said policy." These statements in the bill gave ample notice to the respondent that the plaintiff expected the usual policy issued by the respondent company. Where a party applies for an insurance policy it is presumed that he expects the usual policy issued by the company in which he seeks insurance. In Eames v. Insurance Co., 94 U. S., 621,—a case in its most important features similar to this,—the supreme court says:

"As to the plea that the contract does not specify what kind of a policy was desired, it does not appear that the complainants had any knowledge or notice that the defendant issued different kinds of policies. As Eames justly said, he supposed (as he had a right to suppose) that they would get the same kind of policy which had been issued on the property before. If no preliminary contract would be valid unless it specified minutely the terms to be contained in the policy to be issued, no such contract could ever be made, or would ever be of any use. The very reason for sustaining such contracts is that the parties may have the benefit of them during that incipient period when the papers are being perfected and transmitted. It is sufficient if one party proposes to be insured and the other party agrees to insure, and the subject, the period, the amount, and the rate of insurance is ascertained or understood, and the premium paid, if demanded. It will be presumed that they contemplate such form of policy containing such conditions and limitations as are usual in such cases, or have been used before between the parties. This is the sense and reason of the thing, and any contrary requirement should be expressly notified to the party to be affected by it."

The affidavit in support of the motion to file an amended answer fails to show that new facts have come to the knowledge of the respondent since it prepared its original answer and served a copy of the same upon counsel for the complainant.

The rules governing federal courts of equity in allowing an amended answer to be filed are thus stated by Judge Story in Smith v. Babcock, 3 Summ. 583, Fed. Cas. No. 13,008:

"The general rules of courts of equity in the amendment of answer are well known. In mere matters of form, or mistakes of dates, or verbal inaccuracies, courts of equity are very indulgent in allowing amendments. But when application is made to amend an answer in material facts, or to change essentially the grounds taken in

the original answer, courts of equity are exceedingly slow and reluctant in according it. To support such application they require very cogent circumstances, and such as repel the notion of any attempt of the party to evade the justice of the case, or to set up new and ingeniously contrived defenses or subterfuges. * * * Where the party relies upon new facts, which have come to his knowledge since the answer was put in, or where it is manifest that he has been taken by surprise, or where the mistake or omission is manifestly a mere inadvertence and oversight, there is generally less reason to object to the amendment than there is where the whole bearing of the facts and evidence must have been well known before the answer was put in."

The application of the respondent to file an amended answer is denied.

The complainant offers to file two exceptions to the respondent's original answer. The first exception is as follows:

"In the second clause or paragraph of defendant's answer it is stated: 'The defendant doth not admit any of the statements made in plaintiff's bill in regard to negotiations between J. B. Moore & Co., agents, representing Franklin Brass Co., on the one hand, and Messrs. P. J. Otey & Co., agents for sundry insurance companies, on the other, to be true.'

"The plaintiff desires from the defendant a specific answer whether this allegation, or any of them, are true, and, if not, which of them are false. If the defendant does not know or cannot say of his own knowledge whether they are true or not, he is required to say whether they are true or false to the best of his knowledge and belief."

The second exception is taken for the reason "that nowhere in the said answer of the respondent company is it explicitly admitted or denied that there was a contract for insurance, as is alleged and set out in the complainant's bill." These are not grounds of exception to an answer. "Exceptions lie to an insufficient discovery, or to scandal and impertinence." Adams v. Iron Co., 6 Fed. 180; 4 Minor, Inst. pp. 1179, 1180. Another objection to these exceptions is that they fail to state the charges in the bill to which the answer is addressed. In Brooks v. Byam, 1 Story, 296, Fed. Cas. No. 1,947, the court said:

"The exception should have stated the charge in the bill and the interrogatory applicable thereto, to which the answer is addressed, and then have stated the terms of the answer verbatim, so that the court, without searching the bill and answer throughout, might have at once perceived the grounds for the exception and ascertained its sufficiency."

Bower Barff Rustless Iron Co. v. Wells Rustless Iron Co., 43 Fed. 391; Fost. Fed. Prac. p. 265.

The exceptions are overruled.

The respondent's original answer will be filed, and the cause will be heard on the bill, answer, replication, and testimony.

The bill alleges: That P. J. Otey & Co. had issued policies of insurance in different companies to the amount of $40,000 on the property, which policies had been delivered to the Franklin Brass Company. That these policies were not satisfactory to several of the companies, because they were blanket in form. That P. J. Otey & Co. requested Moore & Co. to change the form so as to make it more specific, and to return the policies that had been delivered, so that new policies might be written according to the required specific form; and that, with these objections removed, they thought the insurance could be effected. That Moore & Co. prepared the required

form, and on receipt of the telegram from Otey & Co. of September 3, 1891, deposited the same in the post office at Richmond, Va., addressed to P. J. Otey & Co. That this form was satisfactory to Otey & Co., as the agents of the insurance company, and was accepted by them without objection. That a short time after the fire, J. B. Moore & Co., the agents of the Franklin Brass Company, applied to P. J. Otey & Co. for the policy which they had agreed to issue, and for the name of the company for which they were acting, and at the same time tendered them the premium therefor. That P. J. Otey & Co. refused to deliver the policy, and refused to give the name of the company. That the complainant has lately become informed that it was the Phenix Insurance Company of Brooklyn for which P. J. Otey & Co. acted and spoke in their said telegram of September 3, 1891. It alleges that in consideration of the premium of $90 which the Franklin Brass Company agreed to pay, and which agreement was acquiesced in by P. J. Otey & Co., the Phenix Insurance Company of Brooklyn did on the 3d of September, 1891, agree to insure for one year therefrom the Franklin Brass Company against loss or damage by fire to the said property in the sum of $10,000, and in the proportions already theretofore agreed upon between said Moore & Co. and Otey & Co.; and, furthermore, to write out and deliver to said Franklin Brass Company a policy for the said insurance. The bill prays that the respondent be required to specifically perform its agreement to insure said property, and to deliver said policy of insurance; and that it be ordered to pay to the complainant the sum of $10,000, the amount assured, with interest thereon, less the premium.

The respondent, in its answer, says:

"It denies that said pretended contract as set forth in said bill of complaint was ever made or agreed upon between said plaintiff and defendant company; it being well understood and agreed between their said respective agents that such should not be the case until the same was referred to and approved by this defendant company, which never occurred by reason of the delay in the receipt by said P. J. Otey & Co. of the said letter of J. B. Moore & Co., dated September 3, 1891, which delay was caused by the failure of said J. B. Moore & Co. to properly prepay the postage on said letter, so that the delivery to and receipt thereof by said P. J. Otey & Co. did not occur until after the property to be insured had been destroyed by fire."

It further denies that the complainant "has lately become informed that it was the Phenix Insurance Company of Brooklyn for which said P. J. Otey & Co. acted and spoke in the said telegram of September 3, 1891," but, on the contrary, it avers that all the information on this subject was put into the possession of the Franklin Brass Company on the ———— day of September, 1892, by the testimony of Kirk Otey, of the said firm of P. J. Otey & Co., in another case. The answer concludes with a general denial that there ever was such a contract between the Franklin Brass Company and the respondent company as is set forth in the bill, or any contract of insurance whatever.

The particular part of the correspondence between the agents of the complainant and the agents of the respondent on which the complainant bases the contract alleged in the bill and sought to

be enforced is found in the telegram from P. J. Otey & Co. of September 3, 1891, and the answer thereto in the letter of J. B. Moore & Co., written on the same day. The said telegram is as follows:

"9/3, Lynchburg.

"J. B. Moore & Co., Richmond, Virginia: With specific form, can write ten thousand at ninety cents, if it will help you.          P. J. Otey & Co."

The answer to this telegram in the letter of same date of J. B. Moore & Co. (quoted in full above), is as follows:

"We also have your telegram that you can place 10,000 at 90c., and trust you will do so, as we would like to get it as low as possible."

In the same letter, J. B. Moore & Co. inclosed the forms of the policies about which they had been previously corresponding, and said:

"We trust the form as now written is specific enough, and will satisfy the companies."

The letter, with the forms inclosed, was mailed in Richmond on the evening of September 3, 1891, but, as the evidence shows, owing to insufficient postage thereon, it was detained in the post office at Lynchburg, and was not received by Otey & Co. until between 5 and 6 o'clock of the evening of September 4, 1891. At 1:30 p. m. of the same day the property was totally destroyed by fire.

Under the pleadings and the evidence, the principal questions for consideration are: First. Does the correspondence just quoted constitute a contract of insurance which the complainant has a right to have specifically performed? Second. Was it understood by both parties that, as a condition precedent to risk attaching, the policy was to be submitted to the respondent insurance company for its approval?

As to the first question. The proposition from the agents of the respondent insurance company to the agents of the Franklin Brass Company is contained in the telegram:

"9/3, Lynchburg.

"J. B. Moore & Co., Richmond, Virginia: With specific form, can write ten thousand at ninety cents, if it will help you.          P. J. Otey & Co."

The acceptance of J. B. Moore & Co., agents of the Franklin Brass Company, is:

"We also have your telegram that you can place 10,000 at 90c., and trust that you will do so, as we would like to get it as low as possible."

The letter containing the acceptance, with the specific form asked for, was on the same day deposited in the mail at Richmond. No objection is raised in the answer of the respondent to this form as not being specific. The denials in the answer relating to any form apply to the form furnished Otey & Co. by Moore & Co. on which the first policies were issued. This form is made an exhibit with the bill for the purpose of giving a description of the property on which insurance was sought, and to show the objectionable form of the first policies, and on account of which the first policies were recalled and canceled. This is not the specific form alleged in the bill to have been furnished Otey & Co. on the 3d day of September, 1891, on

which the policy for $10,000 at 90 cents was to be issued. Not only does the answer fail to deny that this form was specific, but the evidence shows that no objection was made to it by Otey & Co. when it was received by them. On the contrary, from the evidence, it received their approval. In their letter of September 7, 1891, to Moore & Co., Otey & Co. say that they were "writing the D. [daily] Reports, as our records will show, when, simultaneously with your inquiry by telegram, asking, 'How much placed on Franklin Brass Co.?' we received a telegram informing us of burning of the works on Friday." And Kirk Otey, a member of the firm of P. J. Otey & Co., when examined as a witness for the respondent, testified on this subject as follows:

"Q. What had you done, up to the time you heard of the fire, in reference to this insurance? Ans. I commenced writing it on the morning of the 5th, and was engaged writing it when I heard of the fire. Q. What do I understand you when you say you were writing? What were you writing? Ans. I was preparing the daily reports preparatory to mailing them to the companies that evening; the regular routine."

H. C. Stockdell, the general agent of the insurance company, and a witness on behalf of the respondent, defined the rules and instructions of the company relating to daily reports as "requiring every policy to be reported by daily report on or before the day on which it takes effect"; "but," he added, "there is nothing to be reported until the policy is issued. The daily reports, you understand, are copies of the policies and contracts of insurance."

In further evidence that the form sent by Moore & Co. to Otey & Co. on the 3d of September, 1891, was not objectionable to Otey & Co. on account of not being specific, John M. Otey, an insurance agent employed in the office of Otey & Co., who was examined as a witness on behalf of the respondent, testified that he copied said form because the originals were blurred and smeared in the typewriting and carbon-copying of them; that he made verbatim copies of the original as sent by Moore & Co., which he pasted in the general register containing the memorandum or entry of the policies.

The court finds nothing in the extensive correspondence which led to the proposition embodied in the telegram of September 3, 1891, from Otey & Co. to Moore & Co., that, "with specific form, will write ten thousand at ninety cents, if it will help you," which makes it a condition precedent that the policy, before becoming effective, should be submitted to the insurance company for its, approval. In the telegram itself there is no such condition, nor is there anything in the acceptance of Moore & Co. showing that such a condition was part of the contract. The first intimation that we find in the evidence that any contract of insurance is to be submitted to the insurance company for its approval is found in the telegram of Otey & Co. to Moore & Co. dated on the 5th day of September, 1891, in reply to Moore & Co.'s telegram of same date, "Wire total amount placed on Franklin risk," to which Otey & Co. replied: "Twenty-five thousand to-day, if accepted. Twenty thousand Monday, same terms." The contract of insurance, when this telegram was sent, had been consummated, the rights of the parties fixed, and cannot

be impaired by attaching any condition stated in this telegram. If this telegram meant anything more than the usual acceptance of policies after inspection by the company, it cannot be made a condition precedent to the attaching of the risk assumed by the insurance company in the contract made by its offer by telegram of September 3, 1891, and its acceptance by Moore & Co. for insurance by the respondent in the sum of $10,000 at 90 cents. The agents of the insurance company had no power to change this contract from one of absolute insurance to one of conditional insurance; nor had the agents of the assured such power.

The doctrine as to when a risk attaches is thus stated:

"When the risk is accepted upon the terms designated in the application, whether the same is made by writing or parol, the contract is complete, and neither can recede therefrom; and, whether a policy has been executed or not, the risk attaches at the date of the application or at the time designated therein, and the insurer is liable for any loss that occurred after the time when the risk, by the contract, commenced, even though it occurred before its acceptance thereof." 1 Wood, Ins. § 20.

It is the opinion of the court that the evidence establishes the contract sought to be enforced by the complainant, and that the risk assumed in said contract of insurance was in force at the time the loss by fire occurred. It comes clearly within the doctrine laid down in Tayloe v. Insurance Co., 9 How. 390,—a case which has been followed by numerous decisions, and has never been questioned by any of them. In that case the supreme court says:

"An offer by underwriters to insure property on certain terms, sent to the owner by mail, cannot be revoked after it has been received by him, and accepted by a letter deposited in the post office the next day, and addressed to the underwriters. Such acceptance makes a complete contract to insure, which a court of equity will enforce by compelling the underwriters to pay the amount agreed to be insured."

The court has disposed of all questions properly presented by the pleadings. A number of questions were discussed in the oral and written arguments of counsel which the court cannot consider, because they are not set up as defenses in the answer. A decree will be entered in accordance with the prayer of the bill.