# FARMERS' PRODUCE CO. v. McALESTER STORAGE & COMMISSION CO.

No. 4681.    Opinion Filed June 29, 1915.

(150 Pac. 483.)

1. **FRAUDS, STATUTE OF—Sale of Goods—Validity of Contract.** A complete contract, binding under the statute of frauds, may be made through the medium of letters, writings, and telegrams, signed by and passing between the parties, when such writings are so related to the subject matter, and are so connected with each other, that it may be fairly said they constitute one paper relating to the contract.

2. **SALES—Contract—Offer and Acceptance—Variance.** An offer of sale of personal property, and its acceptance, must receive a reasonable construction, and the proposer is bound by its acceptance in that sense.   Immaterial variances between the offer and its acceptance will be disregarded.

3. **CONTRACTS—Acceptance of Proposal.** Consent is deemed to be fully communicated between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer.

4. **SAME—Variance.** If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to; but in other cases any reasonable and usual mode may be adopted.

5. **SALES—Acceptance of Offer—Transmission Through the Mail—Question for Jury.** Where there is no direction as to the mode of communicating the acceptance of a proposed contract, the acceptance may be accomplished through the mail, unless it can be fairly and reasonably inferred from the offer, or other prior communications, that some other means is expected, and that would be a question of fact to be determined by the jury, and in such case the contract is completed as soon as the acceptance is delivered in the post office in the usual way for transmission.

(Syllabus by Robberts, C.)

*Error from Superior Court, Pittsburg County;*
*W. C. Leidtke, Judge.*

Action brought in a justice's court by the McAlester Storage & Commission Company, a partnership composed

of E. W. Schreiner and another, against the Farmers' Produce Company. Judgment for plaintiff on appeal to the superior court, and defendant brings error. Affirmed.

*Wilkinson & Keith,* for plaintiff in error.

*W. J. Horton* and *R. A. Smith,* for defendant in error.

Opinion by ROBBERTS, C. Action to recover damages for breach of contract of sale of personal property.

On the 1st day of February, 1912, Douglas M. Hadley was doing a general merchandise brokerage business in the city of McAlester, Okla., under the name and style of Hadley Brokerage Company. The plaintiff in error, Farmers' Produce Company, a corporation, was carrying on a general wholesale produce business in the town of Rosholt, in the state of Wisconsin, and the defendants in error, E. W. Schreiner and J. A. Clark, as partners, were doing a general wholesale storage and commission business at McAlester, Okla., under the firm name and style of McAlester Storage & Commission Company. On the same day, the defendants in error, being desirous of purchasing two car loads, of 500 bushels each, of Triumph potatoes, authorized the above named Hadley Brokerage Company to wire the plaintiffs in error as follows:

"Feby. 1st, 1912. Farmers' Produce Company, Rosholt, Wisconsin. Book McAlester Commission two cars Triumphs, dollar five McAlester basis. Rabble.
"THE HADLEY BROKERAGE CO."

On the next morning, about 9:30, the Hadley Brokerage Company received the following telegram in answer:

"Rosholt, Wisconsin, Feby. 2, 1912. The Hadley Brokerage Company, McAlester, Okla. Accept McAlester

Commission Company two cars Triumphs. Dawson Bros. Ardmore, one car Triumphs. Central Fruit Company, one car, all one five McAlester, if you will give us time to fill, cars are scarce, how soon must the shipment be, this is all on our record to date.

"FARMERS' PRODUCE CO."

After receipt of the last above-mentioned telegram, and before 12 o'clock, noon, of the same day, February 2, 1912, the defendants in error wrote and mailed to the plaintiff in error the following letter:

"FEBY. 2, 1912.

"Farmers' Pro. Co., Rosholt, Wis.—Gentlemen: We hand you herewith specifications and shipping instructions on the five cars sold to the Hale-Halsell Gro. Co. of this city. You will invoice each car in duplicate and draw on them through the First National Bank, McAlester, Okla.

"We also have your confirmation this morning on two cars to McAlester Commission Co., one car to Dawson, one car to Central Fruit, all Triumphs, at $1.05 per bushel basis, delivered McAlester, and we are also inclosing shipping instructions on these.

"We wish that if possible you would ship the car of Triumphs for the McAlester Commission Co. to Wewoka at once, as through some misunderstanding they guaranteed these people immediate shipment. The others want theirs shipped just as soon as possible. We did not guarantee any special date, but we told them we felt sure you could get these out within ten days.

"Thanking you to let us have confirmation on this letter, we are,

"Very truly,
"THE HADLEY BROKERAGE CO."

And at 4:15 p. m., of the same day, the brokerage company received from the plaintiff in error the following telegram:

"Rosholt, Wisconsin, Feby. 2nd, 1912. Hadley Brokerage Company, McAlester, Okla. We find our stock short, cancel our wire today four cars Triumphs.

"FARMERS' PRODUCE CO."

On the 5th day of February, 1912, the plaintiff in error sent the following telegram to the brokerage company:

"Rosholt, Wis., Feby. 5th, 1912. Hadley Brokerage Company, McAlester, Okla. Four cars Triumphs in question was not permanently accepted. Only conditionally, which was not confirmed, therefore, we hold that cancellation is in order. If our stock had held out as we expected it would be all right, but its our error checking up what was on hand, cannot fill order.

"FARMERS' PRODUCE CO."

Thereafter, Hadley Brokerage Company collected money belonging to plaintiff in error and placed it on deposit in a bank at McAlester, in the name of Farmers' Produce Company, and proceedings in garnishment were commenced by defendant in error, against plaintiff in error, to recover damages for breach of contract of sale of said potatoes. Judgment was recovered before a justice of the peace for $130. Defendant appealed to the superior court, and after trial, on motion of plaintiff, the court directed the jury to return a verdict against defendant for the amount of damages, which was $80. There is no controversy as to the amount of recovery, provided it is finally determined that there was a valid contract, which had been breached. Motion for new trial was overruled, exceptions reserved, judgment rendered for $80, and defendant below brings error. For reversal of the case, plaintiff in error contends for four assignments of error, as follows:

"(1) The petition does not set up a cause of action for the reason that there was no contract consummated.

"(2) That, if there was a contract, it came within the statute of frauds.

"(3) That the court erred in admitting incompetent testimony.

"(4) That the court erred in overruling plaintiff in error's motion for verdict and demurrer to the evidence, and in sustaining the defendant in error's motion for verdict and instructing a verdict for the defendant in error, and pronouncing judgment on said verdict."

The first two assignments go directly to the question as to whether the correspondence created a valid contract of sale of the two car loads of potatoes.

The first contention of plaintiff in error is that this contract comes within the statute of frauds, "being for the sale of goods and chattels at a price not less than $50, and therefore must be in writing." Subdiv. 4, sec. 941, Rev. Laws 1910.

The position of counsel in that behalf is well taken, as a proposition of law, but he is not sustained by the facts. After an examination of the telegrams and letter passing between plaintiff and defendant, we are satisfied that the correspondence brings the parties and their contract within the rule that:

"Such agreement or contract may be authenticated and established through the medium of letters and separate writings and documents, provided they refer to each other, and to the same persons and things, and manifestly relate to the same contract and transaction." (Wood on Statute of Frauds, sec. 345.)

"A complete contract, binding under the statute of frauds, may be made through the medium of letters, writings, and telegrams signed by and passing between the

parties, where such writings are so related to the sub-ject-matter, and are so connected with each other, that it may be fairly said they constitute one paper relating to the contract." *(Atwood v. Rose,* 32 Okla. 355, 122 Pac. 929.)

"It is sufficient if, in the course of the transaction, the party to be charged in some writing signed by him, or his duly authorized agent, recognizes or ratifies an agree-ment sufficiently explicit in terms, and disclosed in writ-ings which show unmistakably that they relate to the same transaction." *(Beckwith v. Talbot,* 95 U. S. 289, 24 L. Ed. 496.)

Guided by these rules, let us now take up these tele-grams and letter. There can be no question about the parties nor the subject-matter.

First telegram:

"Feb. 1st, 1912.  Farmers' Co.  Book McAlester Com. Co. two cars Triumphs (potatoes) one dollar five McAl-ester basis.

"HADLEY BROKERAGE CO."

Answer:

"Feb. 2, 1912.  Hadley Brokerage Co.  Accept Mc-Alester Comm. Co. two cars potatoes  *  *  *  if you will give us time to fill.

"FARMERS' PRODUCE CO."

The answer was received by Hadley Brokerage Com-pany at 9:30 a. m. February 2, 1912, and before noon of that day they accepted the modification, if such it was, by the letter of that date in which they say:

"We also have your confirmation this morning on two cars to McAlester Commission Co., one car to Dawson, one car to Central Fruit, all Triumphs, at $1.05 per bushel basis, delivered McAlester, and we are also enclos-ing shipping instructions on these.

"We wish that if possible you would ship the car of Triumphs for the McAlester Commission Co. to Wewoka at once, as through some misunderstanding they guaranteed these people immediate shipment. The others want theirs shipped just as soon as possible. We did not guarantee any special date, but we told them we felt sure you could get these out within ten days.

"Thanking you to let us have confirmation on this letter, we are,

"Very truly,

"THE HADLEY BROKERAGE CO."

It is apparent from the letter that the brokers understood it, and accepted it as a confirmation of the contract, and further, if there was a modification by the language —"if you will give us time to fill"—the time requested was conceded and accepted, making the contract complete by writing and mailing the letter, which was evidently several hours before plaintiff in error wired the Hadley Brokerage Company seeking to cancel the contract, saying: "We find our stock short; cancel our wire today four cars Triumphs."

The trial court held, and we think correctly, that the correspondence made a complete contract. In *Kaw City Mill & Elevator Co. v. Purcell Mill & Elevator Co.*, 19 Okla. 357, 91 Pac. 1022, this court says:

"An offer of sale of personal property and its acceptance must receive a reasonable construction, and the proposer is bound by its acceptance in that sense. Immaterial variances between the offer and its acceptance will be disregarded."

In the first place, there was no special time fixed for shipment in the original order, and when the acceptance came back with the statement, "if you will give us time to fill," the brokers made no objection, but simply said,

"wish if possible you would ship at once," and then proceeded to give instructions as to shipment. Certainly the contract was intended to be closed by the letter, so far as defendants in error are concerned, and it was their duty at that time to positively reject the proposition, if they considered it a material variance of the offer. If there was a material variance, it was accepted, and the contract was closed on either theory.

"Consent is deemed to be fully communicated between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer, in conformity to the last section." (Section 914, Rev. Laws 1910.)

"If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to; but in other cases any reasonable and usual mode may be adopted." (Section 913, Rev. Laws 1910.)

The law respecting the making of contracts by correspondence is that the contract is completed, when the proposal made by one side is communicated by letter or telegram, and the other party wires his acceptance, or deposits in the post office his letter of acceptance. The moment the telegram is delivered, or the letter mailed in the post office, and not until then, is the contract completed and the parties concluded and bound.

But plaintiff in error contends that the letter of acceptance, with instructions to ship, was not binding upon it, nor did it close the contract, for the reason that it was not sent by the same carrier or agent through which the other correspondence had been conveyed. In support of that contention, counsel call our attention to the case of *Lucas v. Western U. Tel. Co.*, 131 Iowa, 669, 109 N. W. 191, also reported in 6 L. R. A. (N. S.) 1016. On examina-

Farmers' Produce Co. v. McAlester Storage & Commission Co.

tion of that case, we must admit that it seems to uphold the doctrine contended for by counsel; but, on examination of other authorities on the subject, it appears to ᴜs that the case cited stands practically alone. After a careful consideration of the few authorities we have been able to find on the subject, we are of the opinion that the reasonable and best rule should be, where there is no direction as to the mode of communicating the acceptance it may be accomplished through the post office, unless it can be fairly and reasonably inferred from the offer, or other prior communications, that some other means is expected, and that would be a question of fact to be determined by the jury or the trial court.

As stated by Lord Herschell, in *Henthorn v. Fraser*, 2 Chan. 27:

"Where the circumstances are such that it must have been within the contemplation of the parties that, according to the ordinary usages of mankind, the post might be used as a means of communicating the acceptance of an offer, the acceptance is complete as soon as it is posted."

And as stated by Justice Kay in the same case, *supra:*

"Posting an acceptance of an offer may be sufficient, where it can be fairly inferred from the circumstances of the case that the acceptance might be sent by post."

In the instant case one party lived and was doing business in Oklahoma, the other in the state of Wisconsin. The only matter to be considered was a question of time to fill contract, when no time was specified in the offer. We are of opinion that both parties contemplated that the letter sent by post was a means by which an acceptance might be communicated, and that was a fact upon which the trial court passed and should not be dis-

turbed by this court. See, also, *Schultz v. Phenix Ins. Co.* (C. C.) 77 Fed. 375.

We are also of opinion that a fair and reasonable construction of section 913, Rev. Laws 1910, *supra,* is conclusive of the question in hand, and that a reasonable and usual mode of acceptance was adopted by use of the mail.

We have examined the cases cited by plaintiff in error, and are of opinion that they are distinguished from the case in hand, upon the facts presented in each case.

Plaintiff in error further contends that the trial court committed error in the admission in evidence of carbon copies of the telegrams involved. Some evidence was introduced tending to show that the originals were in the possession of counsel for defendant (below), either in the courtroom or at the office of counsel, and that a request, if not a demand, was made for said telegrams and refused. Under the circumstances as developed at the trial, we think it became a question of fact as to whether it was incumbent upon the defendant to produce the original telegrams, and the trial court having passed upon it, this court is concluded by the findings, and under the ruling the secondary evidence became competent, and therefore the court committed no prejudicial error in admitting the copies in evidence.

In Thompson on Trials, vol. 1, sec. 782, it is said:

"If the paper is not in court, and cannot be produced without delaying the trial, notice should be given prior to the trial; but when the paper is in court, and in the power of the party to produce immediately, notice at the trial is sufficient."

And in Jones on Evidence, at section 219, the general rule on the subject is laid down as follows:

"It was accordingly held in the case which settled this rule that, where the party or his attorney had the document in court, it might be called for without previous notice, and that, if not produced, secondary evidence might be given. The same rule prevails in this country, and if the document is proved to be in court, or easy of access, notice given at the trial is sufficient; and the attorney or party may be compelled to state whether he has the document in court. That the document is in court may sometimes be presumed from its nature and its connection with the case, but of course this presumption may be rebutted by the oath of the party or his attorney. It is a subject which rests very largely in the sound discretion of the court."

The rule contended for by counsel for plaintiff in error under sections 5094 and 5095, generally known as the "four days' notice rule," is of course correct; but that practice does not apply here for the reasons above stated and explained.

From a consideration of the entire record, we are clearly of the opinion that the case should be affirmed.

By the Court:  It is so ordered.