## BOLENE REFINING CO. v. ZOBISCH OIL CO.

No. 12410—Opinion Filed Dec. 4, 1923.

Rehearing Denied April 1, 1924.

1. Corporations — Domestic Corporations — Venue of Actions Against.

Section 202, Compiled Oklahoma Statutes 1921, provides: "Action Against Domestic Corporations. An action other than one of those mentioned in first three sections of this article, against a corporation created by the laws of this state, may be brought in the county in which it is situated or has its principal office or place of business, or in which any of the principal officers thereof may reside, or be summoned, or in the county where the cause of action or some part thereof arose."

Plaintiff gave an order for oil in Custer county to a traveling salesman of defendant, a domestic corporation, to be approved, and which was approved, at its home office in Garfield county, thereby consummating the contract. By its terms, defendant agreed to ship the oil to Butler in Custer county on bill of lading with sight draft attached, and otherwise providing for such delivery in Custer county. In an action by plaintiff for damages for breach of the contract for failure to deliver the oil, held, that the venue of such action was in Custer county, since the cause of action arose by the breach of the duty of defendant to deliver such oil in Custer county.

2. Frauds, Statute of—Sale of Goods—Validity of Contract.

A complete contract, binding under the statute of frauds, may be made through the medium of letters, writings, telegrams, signed by and passing between the parties, when such writings are so related to the subject-matter, and are so connected with each other, that it may be fairly said that they constitute one paper relating to the contract.

3. Same — Memorandum Signed After Breach of Contract.

Under the fourth paragraph of section 5034, Compiled Oklahoma Statutes 1921, a memorandum, signed by the party to be charged, is sufficient even if the same be a letter written after the breach of the contract and contains a repudiation of such contract.

4. Partnership—Fictitious Names—Compliance With Statute—Right to Sue.

Sections 8141 and 8143, Compiled Oklahoma Statutes 1921, provide, in substance, that persons doing business as partners under a fictitious name shall not maintain an action on contract made in their partnership name in the courts of the state until they have first filed a certificate with the court clerk showing the names of all members of such partnership and their places of residence and shall publish same for four weeks. In the instant case the partners complied with said statutes after the filing of suit and more than two months before the date of trial, and filed reply setting up the facts of such compliance. Held, to be a sufficient compliance with the statutes.

5. Contracts — Benefit of Third Person—Enforcement.

A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Custer County: Thomas A. Edwards. Judge.

Action by Zobisch Oil Company against Bolene Refining Company. From judgment in favor of plaintiff, defendant appeals. Affirmed.

W. W. Sutton. for plaintiff in error.

A. J. Welch, for defendant in error.

Opinion by ESTES, C. Parties will be referred to as they appear in the court below. Zobisch Oil Company, a copartnership composed of P. Zobisch and A. W. Tenplin, as plaintiff, sued plaintiff in error, a domestic corporation, as defendant, in

the district court of Custer county, for $3,-460, damages for breach of contract to deliver five tank cars of kerosene and five tank cars of gasoline. Defendant appeals from judgment on verdict of jury for said amount. Defendant's refinery and general office were located at Enid, in Garfield county. It also maintained a place of business at Duncan, in Stephens county. On January 2, 1920, the traveling salesman of defendant called on plaintiff at Butler, in Custer county, and procured one, order for five cars of kerosene and five orders for the gasoline. Following is a copy of the orders with the exception hereinafter noted:

"Order                 Date, Jan. 2—20
"No.    85
"To        Bolene Refining Co.
"Ship to    P. Zobich,
"At        Butler
    "Through First National Bank.
"Route_____When_____
"Terms.  Sight draft with bill of lading
                attached
"1          Car Gas, 17c
        "60—62
"Purchaser,    Zobisch Oil Co.
"Salesman,    Eason

"Condition of Sale; Official gallonage capacity of cars to govern settlements. We are not liable for damages arising from strikes, transportation delays, accidents, or for any cause beyond our control. Should there be an overcharge in freight, and railroad agent refuse to deliver the oil upon presentation of bill of lading and demand for delivery of same, then pay the freight and send us expense bill. We will file claim for your account. Should for any cause the bill of lading be delayed in the mails, and the car arrive at destination, wire us of this promptly. All orders subject to approval by our general office.

"Salesman will use separate sheet for each order."

The evidence shows that the original orders were signed "P. Zobisch" by Mr. Zobisch. The order for the five cars of kerosene was at 10c per gallon. One car of gas was 17c; two cars, 17¼c, and two cars, 17½c per gallon. In one order the word "notified" was written after the word "when." Plaintiff pleaded that said orders were sent to the general office of defendant at Enid and approved by defendant by telephone, by letter, and in person; that said merchandise was to be delivered in installments as needed and directed by plaintiff; that plaintiff directed defendant to deliver one car each of gasoline and kerosene in March and in June and the remaining cars on July 10, of said year; that defendant failed and refused to deliver any of same; that at the time when defendant was directed to deliver, the prices

of said oil had advanced and plaintiff was compelled to and did purchase for their needs the products so contracted for at great advanced prices to their damage in said sum. Summons was served on the president of defendant company in Stephens county. The defenses set up will appear in the discussion of the contentions made by defendant.

1. The first assignment of error is that the trial court erred in overruling the special appearance and motion to quash summons made by defendant on the ground that the action was improperly brought in Custer county. Section 202, Compiled Oklahoma Statutes 1921, is:

"Actions Against Domestic Corporations: An action, other than one of those mentioned in the first three sections of this article, against a corporation created by the laws of this state, may be brought in the county in which it is situated, or has its principal office or place of business, or in which any of the principal officers thereof may reside, or be summoned, or in the county where the cause of action or some part thereof arose."

Defendant contends that neither the cause of action nor some (any) part thereof arose in Custer county. Evidently, at the time of preparing briefs, counsel for neither side had access to the recent decision of this court in Consolidated Fuel Co. v. Gunn, 89 Okla. 73, 213 Pac. 750. In that case the salesman took a signed order in Canadian county to be approved by the company in Muskogee county. By a signed letter of approval, a valid contract was consummated which provided that the company sold the coal to be delivered f. o. b. cars at the mines of the company in Okmulgee county. After quoting from 40 Cyc. 81-84, Mr. Justice Kennamer, for the court, says:

"Applying the rule to the instant case, the plaintiff's cause of action consisted of his primary right arising under the contract made in Muskogee county, and the wrong of the defendant in violating his rights under the contract, if any, by the failure to deliver the coal on the cars in Okmulgee county."

It was held in that case that the venue of the action of the purchaser for damages against the coal company was in Muskogee county, where the principal office or place of business of the coal company was, or in Okmulgee county where the company failed to deliver the coal as provided in the contract. In the instant case, the signing of the order at Butler, in Custer county, did not, of itself, cause the action, or any part thereof, to arise in that county. Such order was a mere offer to

purchase and did not become a contract, if at all, until duly approved by the general office of defendant at Enid, in Garfield county. This is elementary. It will be observed from the form of said orders, shown above, that defendant was to ship the merchandise to one of the partners at Butler, Okla., on sight draft with bill of lading attached; that if there should be an overcharge in freight and the railroad agent refused to deliver the oil upon presentation of bill of lading and demand for delivery of same, the plaintiff should pay the freight and send the expense bill to the defendant; that if such bill of lading should be delayed in the mails and the car arrive at destination, plaintiff should promptly wire defendant. If this order or offer became a valid contract by a proper approval—hereinafter disposed of—such contract bound defendant to deliver the oil to plaintiff at Butler, in Custer county. The right of plaintiff was to have tendered at Butler, in Custer county, at the bank named in said order, or under the custom of trade, at the office of the railway company, a bill of lading, the muniment of title to the oil, with sight draft attached. The corresponding duty of defendant was so to do. Clearly, the defendant reserved to itself the title to the oil until delivery of same at Butler, in Custer county, and payment by plaintiff for the same. Therefore, defendant breached this contract, if there was one, by its failure and refusal to deliver the oil at Butler, in Custer county. Consolidated Fuel Co. v. Gunn, supra, rules the instant case in this behalf. There was no error in overruling the special appearance and motion to quash summons.

2, 3. The next important question argued by defendant, under several assignments of error, and particularly under its assignment that the court erred in overruling demurrer to the evidence is, that plaintiff failed to prove a valid contract for the purchase of such oil. The statute of frauds, section 5034, statutes, supra, provides, inter alia, in substance, that an agreement for the sale of goods at a price of not less than $50, unless the buyer accept part thereof or pay at the same time part of the purchase money, shall be invalid unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent. Plaintiff claimed that on receipt of said orders by defendant, the latter mailed, and plaintiff received, a duly signed letter fully approving such orders. This, defendant denied. Plaintiff claimed said letter was lost, and made secondary proof thereof, tending to support such claim. Plaintiff also introduced a let-

ter duly signed by defendant, addressed to and received by plaintiff, dated February 17, 1920, as follows:

"Owning to noncompliance on your part with verbal agreement entered into with our Mr. Eason on date of January 2nd, '20, we regret to advise we are unable to approve of these orders. You will therefore please consider these orders canceled."

While this letter refers to a verbal agreement with its salesman—herein discussed—one evident purpose thereof was to cancel the orders. A memorandum is sufficient, if it be only a letter written by the party and contains an express repudiation of the contract. Drury v. Young, 58 Md. 546, 42 Am. Rep. 343. In 25 R. C. L., section 271, it is said:

"It is a general rule that the memorandum may be made after a breach of the contract, though the party to be charged had signed no writing by which he could be charged."

In Capital City Brick Co. v. Atlanta Ice & Coal Co. (Ga.) 63 S. E. 562, it is said:

"We have but little difficulty in holding that the course of correspondence by the signed admission of the brick company evidenced the agreement alleged by the ice company, though the former throughout the correspondence sought to repudiate the old contract and make a new one. The statute of frauds does not contemplate that the contract between the parties shall be made in writing, but as against the party to be charged, it shall be evidenced by a writing signed by him. * * * The moment written evidence of the contract under his hand, in whatever form, exists, the contract is taken out of the statute, even though such an admission is in the form of a letter repudiating the contract."

Defendant requested, and the court gave, the following two instructions:

"You are instructed that a contract for the sale of a quantity of kerosene or gasoline at a price in excess of the sum of $50 is invalid, unless the same or some note or memorandum thereof be made in writing and subscribed by the party to be charged, or his agent, and where the consideration consists of mutual promises, the contract is invalid, unless subscribed by both parties.

"You are instructed that a complete contract, binding under the statute of frauds, may be made through the medium of orders, writings and letters subscribed by and passing between the parties, when such writings are so related to the subject-matter and so connected by reference to each other that it may be fairly said that they constitute one paper relating to the contract. But such writings must be complete within themselves,

covering all the terms and conditions of the contract, and leaving nothing to be substituted or to be proved by oral evidence, in order to authorize you to find for the plaintiff."

Under the decisions of this court from Halsell et al. v. Renfrow et al., 14 Okla. 674, 78 Pac. 118, to date, the instructions above are sound.

In this connection defendant contends there was an oral agreement made through its salesman with plaintiff—breached by plaintiff—that plaintiff was to direct shipment of the first tank cars within 30 days from the date of said orders, and two cars each month thereafter, and introduced evidence tending to support this contention. Defendant requested, and the court gave, the following instructions:

"You are instructed that, if you find from the evidence that there was a verbal agreement and that said property was to be delivered in installments, and that the plaintiff was to direct shipment of the first tank car within thirty days from the date of said orders, and to direct shipment of two tank cars each month thereafter until all the orders were consumed, and that the plaintiff did not direct the defendant to so ship one tank car within the said thirty days, then you are instructed to return your verdict in favor of defendant."

Also, in connection with the terms of the contract, defendant points out that the said orders do not mention the specific number of gallons to be contained in each car. If no fixed quantity of goods is contracted for, but the purchase is of a carload, damages should be computed on the amount usually contained in an ordinary car. Seefeld et al. v. Thacker et al. (Wis.) 67 N. W. 1142. It will be noted that said orders provide that the official gallonage capacity of cars is to govern settlement. The undisputed evidence is that the amount usually contained in an ordinary tank car, according to the custom of the trade, was from 6,000 to 8,000 gallons.

Thus, it will be seen, all the questions raised by the defendant as to the terms and nature of said contract under the statute of frauds and otherwise, were fairly submitted to the jury under proper instructions where there was a conflict in the evidence. The verdict was amply supported on all questions where there was a conflict in the evidence. Under the well known rules, the defendant is foreclosed by the verdict of the jury, and the judgment thereon cannot be disturbed by this court.

4. It is also contended that the partnership name of plaintiff was fictitious, not showing the names of the persons interested, and that the partners had failed to comply with sections 8141 and 8143, statutes, supra, requiring a certificate of partnership to be filed with the court clerk and to be published. After this suit was filed, defendant filed motion to dismiss for failure to comply with said statutes. Thereupon, such partners duly filed their certificate and completed publication of the notice. Thereafter, defendant answered. Thereafter, said partners filed reply, pleading full compliance with said statutes. Thereafter, and more than two months before the date of the trial, the court overruled such motion to dismiss. A proviso of section 8143 is:

"Provided, however, that if such partners shall at any time comply with the provisions of this article, then such partnership shall have the right to maintain an action in all such partnership contracts and transactions entered into prior to as well as after such compliance, and the disabilities imposed on partnerships for failure to comply with this article shall be thereby removed."

Said partners brought themselves clearly with the rule of Bleecker v. Miller et al., 40 Okla. 374, 138 Pac. 809. In that case compliance with said statutes was not until after the institution of the suit, but long before the date of the trial. Several of the decisions of this court are therein reviewed and the court says:

"No good purpose would have been subserved by nonsuiting them and by throwing them out of court with costs imposed, and then permitting them to return with the same cause of action. We are of the opinion that for the purpose of maintaining this action they substantially complied with the spirit of the statute by filing their certificate, and by pleading same before trial, and before their right of action had been barred by lapse of time."

The trial court did not err in the instant case in overruling the motion of defendant to dismiss.

5. It is also contended, in effect, by defendant that if there was a contract that it was not with the Zobisch Oil Company, but with P. Zobisch and that the Zobisch Oil Company was not the real party in interest. The record shows that the six original orders were on white paper, and were introduced in evidence; that the duplicate carbon copies of same were on paper of a different color, and also introduced in evidence; that none of such 12 exhibits show any signing or subscription of the orders. However, both Mr. Eason, agent of defendant, and Mr. Zobisch testified, in effect, that the original six orders on white paper, then exhibited to them in the trial court,

showed at the time they were introduced in evidence that each was, in fact, subscribed at the time with the signature, "P. Zobisch"; that said name was subscribed by Mr. Zobisch · at the time the orders were given, and because the carbon paper was too short, the said signature on these carbon copies did not show therein. In the petition of plaintiff it is alleged, in substance, that P. Zobisch was one of the partners and that he was duly authorized and acting as the agent of the plaintiffs in the matter of executing said contract. This allegation is fully sustained by the evidence. The letter of defendant, dated February 17th, referred to above in this opinion, and also a letter from the attorney of defendant, dated March 9th, pertaining to these orders, were addressed to Zobisch Oil Company. Defendant treated the transaction as one with and for the benefit of the Zobisch Oil Company. Section 4988, statutes, supra, provides, a contract made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it. We think the record clearly shows that the orders were signed by P. Zobisch for the use and benefit of the Zobisch Oil Company.

A careful examination of the record shows that no substantial error appears. The judgment of the trial court should be and is affirmed.

By the Court: It is so ordered.