### WEBB v. WOODS et al.

No. 26184. March 17, 1936.

Jordan & Evans, for plaintiff in error.

M. F. Hudson, for defendants in error.

PER CURIAM. This action involves an appeal from the district court of Choctaw county, Okla. The record discloses the plaintiff in error, plaintiff below, brought the action against the defendants in error, defendants below, to recover the sum of $320, as damages for breach of contract to deliver a certain consignment of cotton. The original petition alleges that defendant, by his oral contract, sold plaintiff 256 bales of cotton at an agreed price of "25 off of March New York Sellers call," which the defendants refused to deliver and by reason thereof plaintiff is damaged as set out. A demurrer was filed to this petition setting up the statute of frauds, which was promptly and properly sustained by the court, and leave granted to file an amended petition.

The amended petition seeking to avoid the effect of the statute of frauds pleads certain instruments in writing, alleging that the defendant George C. Woods, by written agreement, made and constituted J. Kahn & Company, of Dallas, Tex., his agent, for the purpose of selling 256 bales of cotton belonging to himself; that said J. Kahn & Company appointed as their agent for Choctaw county, Okla., the defendant E. O. Thomas. Copy of such instrument in writing is attached to the petition. The amended petition further alleges that on February 1, 1934, the defendant George C. Woods desired to sell 256 bales of cotton and wrote the defendant E. O. Thomas as follows:

"Idabel, Okla. Feb. 1st, 1934.
"Mr. E. O. Thomas,
    "Soper, Oklahoma.

"As you know I have about 250 bales of cotton in Government warehouse at Hugo, Oklahoma, now as you say, you have the class on this cotton, I asking you to get in touch with your company and let me know at once what best offer you can pay off or on New York at the time I call it.
        "Very truly yours,
            "(Signed) G. C. Woods."

It is further alleged that, immediately upon receipt of the foregoing letter the defendant E. O. Thomas 'phoned the defendant George C. Woods that he, Thomas, could sell said cotton for, and at the price of, "25 off of March New York sellers call," and that said George C. Woods confirmed said sale and authorized the said agent, Thomas, to sell said cotton, and pursuant thereto did so sell the plaintiff the said 256 bales of cotton at the compress at Hugo, Okla., at and for the price of "25 off of March New York sellers call."

That pursuant thereto the plaintiff secured samples of said cotton, went to Texas, and, through his own efforts and expense, sold said list of 256 bales of cotton at a profit to himself of $1.25 per bale, or a total profit of $320; that the defendant refused to deliver said cotton to plaintiff, but on the contrary, upon learning that the plaintiff had sold said cotton at a profit, sold the same to one Hoenberg of Dallas, Tex., in violation of their contract with plaintiff, by reason of which he is damaged as aforesaid. To this amended petition a demurrer was filed by the defendant, which was by the court sustained. From which ruling this appeal is taken.

In view of the foregoing, there is only one question to decide, and that is, "Is a written acceptance, by an agent, of an oral offer to sell an amount of certain cotton, the price of which is in excess of $50, sufficient to remove the transaction from the operation of the statute of frauds, and incident to the determination thereof, whether the agency is properly established by the writing introduced?" Attached to plaintiff's petition as exhibits thereto are certain letters. They read:

"Exhibit E

"Idabel Okla., Feb. 12th, 1934.

"Mr. E. O. Thomas,
  "Soper, Okla.

"I am very much dissatisfied with the treatment that i am getting over my cotton at Hugo, Okla., now in the first place J. Kahn and Co. is my agent and you ar theirs I fine that you had sold my list of cotton so i have been told from dallas and paris, Texas now as you or your company is my agents its a duty that you owe me to get what my cotton is worth as my contract already give you 85 cents per bale now i' am sure that you know That i should not be required to pay you $125 per bale more at the price you are now making me when my cotton 'will easy bring me past price their therefore i am returning you your contract.

"(Signed)  G. C. Woods"

"Exhibit D

"Soper, Okla. Feb. 10th 1934.

"Mr. C. L. Webb,
  "Hugo, Okla.

"I hand you herewith copy of letter which I am this day mailing to Mr. G. C. Woods, Idabel, Okla., with reference to the sale of the 256 bales of cotton now stored at the compress at Hugo.

"Thanking you for this business,

"Yours truly,
  "(Signed) E. O. Thomas"

"Soper Oklahoma, Feb. 10th, 1934.

"Mr. G. C. Woods, Woods Gin Co.,
  "Idabel, Okla.

"Dear Sir:  Wish to confirm herewith, sale of 256 bales of cotton for you at 25 off March New York sellers call.

"Thanking you for past business,

"Yours very truly,
  "(Signed)  E. O. Thomas."

The portion of the statute (sec. 5034, C. O. S. 1921, and sec. 9455, O. S. 1931) under consideration is as follows:

"The following contracts are invalid unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged or by his agent; * * * An agreement for the sale of goods, chattels, or things in action, at a price not less than $50."

There is no contention that any of the exceptions to the above statute were performed by the buyer, therefore, the validity or invalidity of the transaction must be determined by the writing involved.

The rule established under the decisions of the American courts, is set out in 27 Corpus Juris, 289, and is as follows:

"* * * The only signature made necessary by the statute is that of the party to be charged, or, in other words, the defendant in the action or the party against whom the contract is sought to be enforced."

This rule is adopted by the Supreme Court of Oklahoma in the following cases:  Kingfisher Mill & Elevator Co. v. Westbrook, 79 Okla. 188, 192 P. 209; Barnes v. Hunt, 73 Okla. 92, 175 P. 215.

From the body of the opinion in Barnes v. Hunt, supra, the rule is stated as follows:

"It will be ascertained that on August 21, 1914, immediately after the oral contract was made between these parties, the defendant in error confirmed the same by letter of that date, which fu'ly and specifically prescribed the terms, conditions, etc., of said contract and on August 28, 1914, by letter of that date they urged the immediate shipment. * * *"

To the same effect are the authorities from other states. In Capital City Brick Co. v. Atlanta Ice & Coal Co., 5 Ga. App. 436, 63 S. E. 562, the rule is stated as follows:

"The statute of frauds does not contemplate that the contract between the parties shall be made in writing, but as against the party to be charged it shall be evidenced by a writing signed by him. * * * The moment written evidence of the contract, under his hand, in whatever form, exists, the contract is taken out of the statute, even though such an admission is in the form of a letter repudiating the contract."

To the same effect is Cavanaugh v. Casselman (Cal.) 26 P. 515:

"It is not necessary that the plaintiff should. himself, sign the agreement of May 16, 1888, in order to enable him to enforce it against the defendant. The statute of frauds requires the contract, or some note or memorandum thereof, to be in writing, but it need be subscribed only by the party to be charged."

In Jones v. Marsha'l-Wells Co. (Ore.) 208 P. 768, it is said:

"A memorandum signed by an agent of the party to be charged is adequate providing the agent had authority. * * * A memorandum

is adequate and within the meaning of the statute of frauds though it be addressed to the writer's agent, provided the intent to contract thereby is manifest."

Assuming that the authority given to the agent, E. O. Thomas, by George C. Woods was a limited agency and, as suggested by defendant in error in his brief, that any sale made by the agent Thomas should be subject to the price and time of sale (this being as provided in the agency agreement noted as exhibit "A"), and that after receiving the offer from C. L. Webb, agent Thomas communicated this to Woods by telephone and received his assent thereto, then the authority for Thomas to actually enter into the contract of the sale with Webb (as to time and price) was an oral one and given by Woods over the telephone.

It is said in 27 C. J. 295:

"In the absence of express statutory requirement, an agent's authority to sign a memorandum of contract within the statute of frauds need not be in writing."

We have no such statutory requirement, and accepting the authority given by Woods to Thomas by the telephone conversation, coupled with the terms of the agency contract, there would be full authority to the agent Thomas to enter into the contract of sale with the plaintiff, Webb. Of course the question as to whether Woods actually directed over the telephone that the sale be made for the price set out in plaintiff's petition is and would be a question of fact to be determined by the jury. However, for the purpose of this demurrer, this would, of course, be taken as true.

In other words, the above supplies the answer to the point raised by the defendant in error that the agent Thomas exceeded his authority under the terms of the agency agreement in making the sale to Webb.

Even though the agent Thomas did not have the authority to make or enter into the contract in question with Webb, it would appear that the letter from Woods, set out as exhibit "E" to the amended petition, would be sufficient under the statute of frauds. In this letter Woods admits that the goods had already been sold by Thomas, and the letter is, in fact, in the nature of a repudiation of the sale. This of itself would be a sufficient memorandum under the statute of frauds. See Bolene Refining Co. v. Zobisch Oil Co., 98 Okla. 202, 224 P. 942; Schuerer v. Crockett, 108 Okla. 218, 236 P. 30.

It is insisted by the defendant in error, though, conceding that the letters might be binding on him, the contract sued on is nevertheless void for want of mutuality of obligation, inasmuch as the plaintiff in error would not be bound to pay for the cotton in case suit were filed against him. This theory is not applicable to the case at bar in view of the authorities cited, and is against the great weight of authorities. 25 R. C. L. section 308, page 672.

The phrase "25 off of March New York sellers call" seems to be well understood by both the plaintiff and the defendants. In the original letter, under the date of February 1, 1934, the defendant Woods used the term "let me know at once what best offer you can pay on New York at the time I call it." As stated in plaintiff in error's brief, such words must be construed in their particular significance, and oral testimony is admissible to show the meaning thereof. Rider v. Morgan, 31 Okla. 98, 119 P. 958; King Collie Co. v. Richards, 76 Okla. 6, 184 P. 130.

Inasmuch as the plaintiff and defendant entered into a contract not prohibited under the statutes, the terms of its enforcement only being prescribed by the statute of frauds, it is the duty of the court to enforce the same. All that portion of said contract resting in parol is admitted by the demurrer. The rule is well stated in Finerty Investment Co v. Athey, 89 Okla. 284, 215 P. 611, as follows:

"It is the duty of the courts to enforce valid contracts voluntarily entered into, in the absence of fraud or mistake, and the courts have no authority to relieve parties of their solemn obligations, assumed under such contracts."

After a careful examination of the record and the briefs of the parties to this action, and the authorities herein cited, we are convinced that the district judge erred in sustaining the demurrer to the amended petition, and that the case should be reversed and remanded so as to permit the parties to try the issues involved, in accordance with the views expressed herein.

The Supreme Court acknowledges the aid of Attorneys J. S. Severson, Ed L. Jones, and Hal F. Rambo in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Severson and approved by Mr. Jones and Mr. Rambo, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration,

this opinion, as modified, was adopted by the court.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, CORN, and GIBSON, JJ., concur. RILEY, BAYLESS, WELCH, and PHELPS, JJ., absent.