### GALL v. BRASHIER et al.

No. 3634.

Circuit Court of Appeals
Tenth Circuit.

Aug. 6, 1948.

Rehearing Denied Aug. 30, 1948.

HUXMAN, Circuit Judge, dissenting.

---

Albert D. Lynn and J. B. Dudley, both of Oklahoma City, Okl. (Paul Dudley and Dudley, Duvall & Dudley, all of Oklahoma City, Okl., on the brief), for appellant.

Geo. N. Otey, of Ardmore, Okl. (Otey, Johnson & Evans, of Ardmore, Okl., on the brief), for appellees.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Gall brought this action against the Brashiers in the district court of Garvin County, Oklahoma, for specific performance of an agreement to give an oil and gas lease on certain lands in Garvin County, owned by the Brashiers and others. The case was duly removed to the United States District Court. The trial court sustained a motion to dismiss the second amended complaint [1] and dismissed the action.

The complaint alleged that on January 6, 1947, Gall entered into negotiations with Ernest Brashier to acquire an oil and gas lease upon a tract of land in Garvin County, particularly described in the complaint; that thereafter the Brashiers, acting through their agent and attorney, Samuel Hurwitz, made a firm offer to lease such lands to Gall for a cash bonus of $12,000, $1,000 to be deposited in the First National Bank of Orange, California, as a part payment on the lease, and the balance to be paid on or before January 24, 1947, after title examination showing a merchantable title in the Brashiers; that on January 18, 1947, Gall sent a telegram to the First National Bank of Orange, California, reading as follows:

"I am forwarding to you by Western Union $1000 to be delivered to Sam Hurwitz when I approve title to certain properties which I am buying from his clients, E. A. Brashier. I will advise you when to release the $1000 to Mr. Hurwitz";

that on the same day, Gall sent a telegram to Hurwitz reading as follows:

"This is to confirm our telephone conversation in regard to purchase by me of oil and gas lease covering NW ¼ SE ¼ Section 8, Township 1 North, Range 2 West, Garvin County Oklahoma for consideration of $12,000, lease to be executed by E. A. Brashier and others on the form forwarded to Mr. Brashier by me. I have forwarded to First National Bank, Orange, California, $1000 as part payment and good faith money on this transaction. You are to forward duly executed oil and gas lease to Tradesmens National Bank, Oklahoma City, with draft attached in amount of $11,000 drawn on me and payable to you or your clients. This draft is to be payable on or before January 24, 1947, upon approval of title by me. If I do not approve title as merchantable and find that it cannot be perfected I will return lease to you and First National Bank,

---

Orange, California, is to return to me the $1000 deposited with them today. Please wire your confirmation of this transaction to me";

that Hurwitz represented the Brashiers, who were part owners of the land, and J. A. Barnett and William L. Barnett, who owned the remaining interest; that after sending the last-mentioned telegram, Gall talked to Hurwitz by long distance telephone and advised the latter that he had forwarded the $1000 to the bank; that Hurwitz told him the terms were satisfactory to the Brashiers and Barnetts; that the Barnetts lived in the northern part of California and were on their way to Orange, California, and that the Barnetts and Brashiers would sign the lease late that day, or the following day, and that it would be mailed as agreed upon; that the owners would not furnish an abstract, but that Gall would have to procure an abstract for the examination of the title; that immediately thereafter, Gall ordered an abstract; that on January 20, 1947, at Orange, California, the Barnetts and their wives and each of the Brashiers executed the lease on a form furnished by Gall in accordance with the terms of the alleged agreement, and delivered the same to Hurwitz with instructions to complete the transaction by forwarding the lease, with a draft for $11,000, to the Tradesmens National Bank of Oklahoma City, Oklahoma; that on January 21, 1947, the Brashiers revoked such instructions, withdrew the oil and gas lease, and entered into negotiations to execute a lease to a party unknown to Gall; that on January 21, 1947, Hurwitz sent a telegram to Gall reading as follows:

"Regret my clients have rejected your offer. They apparently have closed another deal";

that Gall commenced this action on January 24, 1947; that on January 25, 1947, there was presented to the County Clerk of Garvin County, for filing and recording, an oil and gas lease which had been executed by the Barnetts and Brashiers on the form furnished by Gall; that the name of Gall had been erased in such instrument

and the name of Robert S. May, as lessee, inserted; that the term of the lease had been changed from 5 years to 10 years, and the date changed to January 22, 1947.

Gall prayed for specific performance, or, in the alternative, for damages in the sum of $15,000.

Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that "in pleading to a preceding pleading, a party shall set forth affirmatively * * * statute of frauds. * * *" However, since the contention that the statute of frauds must be affirmatively pleaded was neither raised here nor below, and since the essential facts seem to appear affirmatively on the face of the complaint, we shall undertake to determine whether the lease and the telegrams met the requirements of 15 O. S.A. § 136, which reads as follows:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent:

&ast; &ast; &ast; &ast; &ast; &ast;

"5. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

The placing of the lease in the hands of Hurwitz for delivery to the Tradesmens National Bank of Oklahoma City did not constitute a delivery of the lease.

The authorities are in disagreement as to whether a delivery of the memorandum is necessary to meet the requirements of the statute of frauds.[2]

So far as we are able to find, the Supreme Court of Oklahoma has not passed on a case where the deed or lease, relied on as a memorandum, remained undelivered in the hands of the vendor or lessor, but the Supreme Court of Oklahoma has consistently held in cases where the deed or lease, relied on as a memorandum, had

---

[2] See 37 C.J.S., Statute of Frauds, § 173, page 650; 27 C.J. §§ 383, 384, page 300.

been deposited in escrow, delivery to the vendee or lessee was not necessary to meet the requirements of the statute of frauds and has cited, with approval, decisions of the Supreme Court of Kansas and the Supreme Court of Alabama, which adhere to what, perhaps, is a minority view that delivery is not essential under the statute.

In Schuerer v. Crockett, 108 Okl. 218, 236 P. 30, 32, the court said:

"In Arnett v. Wescott, 107 Kan. [693], 698, 193 P. [377], 379, the Supreme Court of Kansas, in discussing a similar proposition, makes use of the following language:

" 'Since an undelivered deed may constitute a sufficient memorandum, it is of no importance which party has the instrument in its possession or where it comes from. If the memorandum or writing "signed by the party to be bound thereby" is not in possession of either party, if it be found discarded and abandoned in some ashheap or floating upon the streets, and is produced at the trial and shown to have been signed by the parties sought to be bound, and otherwise answers the requirements of the statute, it is sufficient.'

"In the case of Jenkins v. Harrison, 66 Ala. 345, the court, in discussing a similar question, said:

" 'A deed, drawn and executed with knowledge of both parties, with the view to consummation of the contract of sale, which, in itself, and of itself, embodies the substance, though not all the details or particulars of the contract, naming the parties, expressing the consideration, and describing the lands, though not delivered, and its delivery postponed until the happening of a future event, is a note, or memorandum of the contract, sufficient to satisfy the words, the spirit, and purposes of the statute of frauds.' "

Again in Hopkins v. Walker, 144 Okl. 254, 291 P. 70, 72, the court said:

"There is some conflict in the authorities as to whether or not an *undelivered deed or lease of real estate signed by the grantor or lessor is a sufficient memorandum of an oral agreement of sale or lease to take such agreement out of the statute of frauds.* But the rule seems to be well established in this state that such deed or lease is a sufficient memorandum. In Schuerer v. Crockett et al., 108 Okl. 218, 236 P. 30, it was held:

" 'Where the vendor, pursuant to a parol agreement to convey lands, executes a deed to the vendee, and deposits the same in escrow, to be delivered to the vendee upon the payment of the balance of the purchase price, and the recitals of such deed contain the terms of the parol agreement, including the consideration, it is a sufficient compliance with the statute of frauds.' " (Italics ours.)

See, also, Akers v. Brooks, 103 Okl. 98, 229 P. 544.

In the Oklahoma cases the instrument relied on as a memorandum had been deposited in escrow. But the holding of the Kansas and Alabama cases, cited with approval, is not that a delivery in escrow is a sufficient delivery under the statute of frauds, but that a delivery is not an essential prerequisite.[3]

---

[3] In Arnett v. Wescott, 107 Kan. 693, 698, 193 P. 378, the court said:

"The writing required by the statute is merely evidence of the contract, and is not the contract itself.

" The writing does not become the contract, but simply the evidence thereof; and whether it remains in the hands of the one party or the other, if it is properly identified as the full expression of the contract, upon which the minds of the two parties met, it fulfills the purpose of the statute and renders the contract agreed upon enforceable.' Ames v. Ames, 46 Ind. App. 597, 604, 91 N.E. 509, 512.

\*    \*    \*    \*    \*    \*

" The courts are at variance upon the question whether a deed alone, when executed by the vendor and deposited in escrow, to be delivered by the depositary to the grantee upon his paying the purchase price or performing some other condition, is itself a sufficient memorandum to avoid the statute of frauds. The cases are cited in 29 Am. & Eng. Ency. of Law, 855. A majority say that the deed alone is not a sufficient memorandum. But the better reasoning seems to be the other way. The ground usually stated for holding that the deed is not a sufficient memorandum is that, until it is finally delivered or the condition is performed, it does not constitute a contract. The reason given seems to be beside the question, which, in this character of cases, is not, Was there a written contract? but is, Is there a sufficient

708

The underlying philosophy of the Kansas and Alabama cases and cases in other jurisdictions which follow the minority view is that, since the purpose of the statute is to prevent fraud and perjury, the question is not whether there is a written contract, but whether there is a sufficient memorandum signed by the party to be charged which is evidence that a contract exists; that the evil the statute seeks to guard against is the use of oral evidence to prove the contract and that such evil is guarded against and the purpose of the statute served by the production of a memorandum, the execution and contents of which satisfy the statute, although it was never delivered.[4]

The contention that delivery was necessary to make the lease effective is no answer. The lease is relied on, not as a contract, but as a memorandum of a prior oral agreement.[5]

■ We think the Oklahoma decisions strongly indicate that Oklahoma would follow the minority view in a case where the lease relied on as a memorandum remained in the hands of the lessor, and we, therefore, conclude that delivery of the lease was not a requirement under the statute.

■ The memorandum may consist of different writings passing between the parties, if they are so related to the subject-matter and so connected with each other that they may be fairly said to constitute one paper relating to the contract.[6]

■ We think the oil and gas lease alleged to have been signed by all of the Brashiers and by the Barnetts and their wives and the telegram of Gall to Hurwitz are so related to the subject-matter of the alleged contract and so connected with each other that they may be fairly said to constitute one paper relating to the contract, and that the execution of the lease constituted a recognition and ratification of the oral contract set forth in such telegram. We accordingly conclude that there was a sufficient memorandum of the alleged oral contract to meet the requirements of the statute.

---

memorandum signed by the party which is evidence that a contract existed or which tends to prove that fact? The evil the statute seeks to guard against is the use of oral evidence to prove a contract. This is obviated by the production of the deed which is a memorandum of a contract. * * *' "

[4] 49 A.J. § 390, p. 692.

[5] In Webb v. Woods, 176 Okl. 306, 55 P.2d 959, 962, the court said:
"To the same effect are the authorities from other states. In Capital City Brick Company v. Atlanta Ice & Coal Co., 5 Ga. App. 436, 63 S.E. 562, 565, the rule is stated as follows: 'The statute of frauds does not contemplate that the contract between the parties shall be made in writing, but, as against the party to be charged, it shall be evidenced by a writing signed by him. * * * The moment written evidence of the contract under his hand, in whatever form, exists, the contract is taken out of the statute, * * *' "

[6] Hopkins v. Walker, 144 Okl. 254, 291 P. 70, 72; Barnes v. Hunt, 73 Okl. 92, 175 P. 215, 216; Meek v. Flynn, 198 Okl. 18, 174 P.2d 363, 365; Atwood v. Rose, 32 Okl. 355, 122 P. 929, 932; Farmers' Produce Co. v. McAlester Storage & Com'n Co., 48 Okl. 488, 150 P. 483, 484, L.R.A.1916A, 1297; Bolene Refining Co. v. Zobisch Oil Co., 98 Okl. 202, 224 P. 942, 944; Logan v. Waddle, 315 Mo. 980, 287 S.W. 624,

626; Lawrence v. Potter, 91 W.Va. 361, 113 S.E. 266, 272; Harris v. Morgan, 157 Tenn. 140, 7 S.W.2d 53, 56.
In Farmers' Produce Co. v. McAlester Storage & Com'n Co., 48 Okl. 488, 150 P. 483, 484, L.R.A.1916A, 1297, the court said:
" 'Such agreement or contract may be authenticated and established through the medium of letters and separate writings and documents, provided they refer to each other, and to the same persons and things, and manifestly relate to the same contract and transaction.' Wood on Statute of Frauds, § 345.
" 'A complete contract, binding under the statute of frauds, may be made through the medium of letters, writings, and telegrams, signed by and passing between the parties, where such writings are so related to the subject-matter, and are so connected with each other, that it may be fairly said they constitute one paper relating to the contract.' Atwood v. Rose, 32 Okl. 355, 122 P. 929.
" 'It is sufficient if, in the course of the transaction, the party to be charged in some writing signed by him, or his duly authorized agent, recognizes or ratifies an agreement sufficiently explicit in terms, and disclosed in writings which show unmistakably that they relate to the same transaction.' Beckwith v. Talbot, 95 U.S. 289, 24 L.Ed. 496."

It is true that there was no allegation that Hurwitz's authority as agent was in writing but, by executing the lease, the Brashiers and the Barnetts ratified and confirmed the acts of Hurwitz and it became their contract.[7]

The contention that the offer of Hurwitz was to furnish a merchantable title and that the telegram to the First National Bank of Orange reading, "when I [Gall] approve title" showed that the minds of the parties did not meet on the terms of the agreement is without substance. The telegram to Hurwitz, in part, read: "This draft is to be payable on or before January 24, 1947, upon approval of title by me. *If I do not approve the title as merchantable* and find that it cannot be perfected I will return lease to you." (Italics ours.)

The Barnetts were not indispensable parties in an action to recover damages for the breach of the contract. The contract was a joint contract. One of several joint contractors is not an indispensable party defendant in an action for damages for breach of the contract.[8]

The judgment is reversed and the cause remanded with instructions to overrule the motion to dismiss.

HUXMAN, Circuit Judge (dissenting).

I think when the complaint in an action for specific performance of a joint agreement affecting real estate shows upon its face that the contract relied upon was not executed by one of the defendants sought to be charged that it fails to state a cause of action upon which a recovery may be had and that a motion to dismiss should be and in this case was properly entered. Gall named Ernest Brashier, Malind Brashier and Alice Brashier as defendants in this action. The writing upon which he relies to satisfy the statute of frauds requiring a contract for the sale of real estate to be in writing is the executed lease, a copy of which he attached to his complaint and made a part thereof. It shows upon its face that it was not executed by Alice Brashier. It thus affirmatively appears from the complaint that the contract upon which he relies was not reduced to writing and executed by the parties whom he seeks to charge in this action. His general allegation that the contract was executed by the parties sought to be charged is not sufficient under these facts to state a cause of action. If Alice Brashier was not a necessary party to the suit, she should not have been named as a defendant. If she was, and apparently she was because the complaint so states, Gall does not have a memorandum of the contract reduced to writing and signed by the parties whom he seeks to charge.

I agree with the trial court that the action as set out in the complaint could not be maintained because of the statute of frauds and that the motion to dismiss was properly sustained.

---

[7] Washington v. Colvin, 55 Okl. 774, 155 P. 251, 252.

[8] 28 U.S.C.A. § 111; Camp v. Gress, 250 U.S. 308, 316, 317, 39 S.Ct. 478, 63 L. Ed. 997.