## COMMONWEALTH CO. v. BRADBURN.

No. 23633.     Jan. 29, 1935.

Kleinschmidt & Johnson, for plaintiff in error.

Suits & Disney, for defendant in error.

PER CURIAM. The Commonwealth Company is an Oklahoma corporation engaged in the real estate agency business, and with its office and principal place of business in Tulsa, Okla. About the month of December, 1928, it was, as such real estate agent, seeking to find suitable quarters for Greenberg Bros. of Kansas City to establish a branch business in Oklahoma City; and Coral B. Davis, who was the manager of the business lease department, went with Lee Greenberg to Oklahoma City for the purpose of showing him such property as the Commonwealth Company had listed, or finding for him other rental property suitable for their purposes. On this visit they contacted H. F. Bradburn, who was in the real estate business in Oklahoma City, and Davis for the Commonwealth Company had Bradburn show him and Greenberg various properties which were listed with Bradburn. None of the properties submitted met Mr. Greenberg's approval at that time, and he went back to Kansas City. Thereafter there was some correspondence between Bradburn and the Commonwealth Company and Greenberg Bros. about the same subject; and on the 12th day of August, 1929, the Commonwealth Company closed a deal for the renting to Greenberg Bros. under a ten-year lease of a building belonging to one J. V. Moore. The Commonwealth Company charged Moore a commission of $2,400 for closing the deal, of which $1,000 had been collected when this suit was filed, and the balance to be paid at the rate of $100 a month for the period of fourteen months. Bradburn brought this action against the Commonwealth Company, alleging that he had put them and Greenberg Bros. in touch with the property rented and that he was the procuring and efficient cause of the deal which was finally made; and suing for half of this commission, claiming a specific contract with Coral B. Davis representing the Commonwealth Company for such interest, and also suing under quantum meruit or custom of splitting fees in such cases.

The defendant both generally and specially denied the allegations of the plaintiff's petition, and, on trial, the jury rendered a verdict in favor of Bradburn, and the defendant has appealed to this court.

As before stated, the defendant is an Oklahoma corporation with its office and principal place of business in the city of Tulsa. Summons was issued out of Oklahoma county and served upon the Commonwealth Company in Tulsa county, and, as the case went to trial, there was no local defendant to hold jurisdiction in Oklahoma county. Timely objection was made by the defendant on the question of jurisdiction, and its plea overruled and exception saved by the defendant.

If the jurisdiction of the district court of Oklahoma county is to be sustained, it must be under section 112 of 1931 Oklahoma Statutes, the material part of which is as follows:

"An action * * * against a corporation created by the laws of this state, may be brought * * * in the county where the cause of action or some part thereof arose."

Counsel for defendant contend that no part of plaintiff's cause of action arose in Oklahoma county, but that same arose entirely in Tulsa county. If this contention of the defendant is well founded, then, under this section of the statute quoted, venue lay in Tulsa county and not in Oklahoma county, and defendant's plea to the jurisdiction should have been sustained and the cause dismissed for want of jurisdiction.

The contract here was an oral contract, and it is not contended by defendant that there was any specially fixed place of payment (it could not well make such contention, as it denied making any special contract at all), but it seeks to bring the case under the place payable rule by virtue of the testimony of the plaintiff, Bradburn, as follows:

"Q. And the common accepted practice,

then, if you closed a transaction and earned a commission, it would be payable in your office? A. With the co-operation of the other broker, that is right, or at some agreed place. Q. Then, if the Commonwealth Company closed the transaction, it would be payable in their office, and you would claim a part of the commission; is that not true? A. That is exactly what I am doing; yes, sir. Q. And it would be according to your contention then, the common practice for them to issue their check for your proportionate part and send it to you at Oklahoma City? A. Yes."

The contention of defendant's counsel is best stated in his own language as follows:

"From the foregoing it is apparent that if there is a breach of duty to the plaintiff by the defendant, it was the failure of the defendant to do something in Tulsa, to wit, issue its check payable to the plaintiff and mail the same in Tulsa addressed to the plaintiff in Oklahoma City. * * * Then, if the breach of duty occurred in Tulsa, that is unquestionably where the cause of action arose."

This brings us squarely down to the question, What is a cause of action and where does it arise?

The Supreme Court of the United States, in the case of Chesapeake & Ohio Railroad Co. v. Dixon, 179 U. S. 131, 45 L. Ed. 121, has thus defined what is a cause of action:

"The cause of action manifestly comprised every fact which plaintiff was obliged to prove in order to obtain judgment, or, conversely, every fact which defendants would have the right to traverse."

The most widely quoted definition as to what constitutes a cause of action is from Pomeroy's Code Remedies, which is as follows:

"A primary right possessed by the plaintiff and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right or duty; a remedial right in favor of the plaintiff and a remedial duty resting upon the defendant springing from delict; and finally the remedy or relief itself. Every action, however complicated or however simple, must contain these essential ingredients. Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action."

This definition was quoted by this court in the case of Consolidated Fuel Co. v. Gunn, 89 Okla. 73, 213 P. 750, and after also discussing other authorities the court said:

"Applying the rule to the instant case,

the plaintiff's cause of action consisted of his primary right arising under the contract made in Muskogee county and the wrong of the defendant in violating his rights under the contract, if any, by the failure to deliver the coal on the cars in Okmulgee county"

—and held as to venue against the defendant domestic corporation that:

"In an action by the plaintiff for damages for breach of the contract of sale for failure to deliver the coal, the venue of such action was in Muskogee or Okmulgee county."

This case is quoted from and cited with approval in the case of Bolene Refining Co. v. Zobisch, 98 Okla. 202, 224 P. 942, and the same holding is again made by this court in that case.

Defendant relies upon the cases of Tuloma Oil Co. v. Johantgen, 107 Okla. 92, 230 P. 264, and Guaranty State Bank of Tishomingo v. First National Bank of Ardmore, 127 Okla. 292, 260 P. 508, in support of his contention. These cases establish the rule that a cause of action upon a written instrument payable at a place designated arises when the money is not paid at the place where payment ought to be, but is not made. In both cases the court held:

"A cause of action upon a note arises at the place where the note is made payable and payment is not made."

It will be observed from a study of the cases from the different states, that there is much conflict on this question. (See 67 C. J., 28, and cases cited in foot notes.) The statutes of many of the states provide for the bringing of an action like the one at bar "where the cause of action arose." A statute of this kind necessarily limits the venue to one county and requires the court to make selection of some particular thing which it will call the cause of action and designate where it arises. In the case of Doughty, Receiver, v. Funk, 15 Okla. 643, 84 P. 484, this court had before it the question of where the cause of action arose, and discussed the sharply divergent views of place of making contract and place of nonperformance or nonpayment. As leading authority on the view of place of making contract as fixing venue, the court quoted the following language from the Supreme Court of the state of North Carolina (Steele v. Rutherford, 70 N. C. 137):

"We do not think that the failure to pay the debt was the cause of action spoken of in the statute; but that the debt itself

was the cause of action. And that the expression 'where the cause of action arose' means where the debt was contracted or originated"

—and after considerable discussion of the two lines of authority, this court in that case followed the rule of the North Carolina case, and held that since the debt involved was contracted in Kansas, the cause of action arose in Kansas.

It will be further observed that our statute controlling venue and applicable to the instant case is not limited to "where the cause of action arose," but throws in the additional words, "or some part thereof." This is a legislative construction on the face of the act that a cause of action may be divisible into parts and may partly arise in one place and partly in another. The case of Tuloma Oil Co. v. Johantgen, so strongly relied upon by defendant, recognizes the difference between an action for indebtedness under oral contract and an action upon a note made payable at a certain place. We do not desire to be understood as departing from the rule of the Tuloma Oil Company Case, as applied to a note with a place certain for payment. That case is supported by the weight of authority of all of the states, but it is not applicable to indebtedness under oral contract and without place certain by the terms of the contract for payment. In the case of Clem Oil Co. v. Oliver, 106 Okla. 22, 232 P. 942, this court held in the syllabus as follows:

"In the absence of an agreement upon the subject, a debt is payable where the creditor resides."

The court further held in that case that some part of the cause of action arose where the oral contract was made.

There is no necessity in the instant case to declare a conflict between the Tuloma Oil Company Case and the Consolidated Fuel Company Case or the Bolene Oil Company Case or the Clem Oil Company Case. All of these cases still remain the law and are not in conflict with each other, and are supported by the weight of authority as to the particular state of facts involved in each case.

It would be a strained construction to hold that the evidence quoted of plaintiff, as to custom of debtor mailing check from his office to the creditor, would avoid or dispense with the legal duty of the debtor to hunt up his creditor and pay him. It would be a strained construction of testimony to say that these statements of plaintiff would abrogate as to him the plain holdings of this court in the Clem Oil Company Case or the Consolidated Fuel Company Case, and deprive him of his right to bring his action in any county where "some part thereof arose." In the light of the verdict of the jury, it must be taken as true that a contract for his services as real estate agent was made in Oklahoma county, and that all services performed or things done by the plaintiff were performed and contemplated by the contract to be performed and done in Oklahoma county. Under these facts and the authorities cited, the plaintiff had the right to sue the defendant as a domestic corporation in either Oklahoma or Tulsa counties, and defendant's plea to the jurisdiction of the district court of Oklahoma county was properly overruled.

Considerable complaint is made by defendant of the instructions given by the court, but they were drawn in identical language with the former opinions of this court, and it would only incumber the volumes of the reports and would be mere repetition to quote them in this opinion and again repeat the opinions from which they were drawn. The instructions aptly advised the jury as to the issues of fact to be passed upon by them, and there was no error in either the giving or refusing of instructions.

Complaint is further made as to the form of the verdict and the lack of conformity between the verdict of the jury and the judgment rendered by the court. However, if the plaintiff is entitled to collect from the defendant at all, then the judgment correctly reflects the extent and terms upon which the defendant should account. The method of reaching the result of the judgment is a little unusual, but the difference in form merely modified the terms of the verdict and made the judgment conform to defendant's requested instruction No. 7; and no possible prejudice resulted to defendant on account thereof. Defendant's contention in this respect is entirely without merit.

Defendant set up in its motion for new trial irregularity in the manner of receiving the verdict, but offered no testimony or evidence to support these allegations. The argument in the briefs on both sides with respect to this complaint will therefore not be further noticed, as pure allegation in a matter of this kind without proof submits nothing on appeal to this court.

The case submitted a clear-cut question

of fact to the jury as to whether the plaintiff was the procuring and efficient cause of the deal which was finally made; no evidence was admitted outside of the rules of competency and ordinary discretion, and an examination of the briefs and the transcript of the evidence and proceedings fails to show sufficient reason for disturbing their verdict.

The judgment appealed from is therefore affirmed.

McNEILL, C. J., and RILEY, BUSBY, GIBSON, and PHELPS, JJ., concur.

The Supreme Court acknowledges the aid of District Judge E. A. Summers, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, the opinion, as modified, was adopted by the court.